RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0100P (6th Cir.)
File Name: 04a0100p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 02-6107

LAWRENCE ORLANDO, SR.,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-00160—Todd J. Campbell, District Judge.

Argued: January 29, 2004

Decided and Filed: April 8, 2004

Before: MERRITT and SUTTON, Circuit Judges;
FEIKENS, District Judge.*

———————

### COUNSEL

**ARGUED:** Jerry Scott, SCOTT & KEA, Murfreesboro, Tennessee, for Appellant. Jimmie Lynn Ramsaur,

———————

\* The Honorable John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation.

ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Jerry Scott, SCOTT & KEA, Murfreesboro, Tennessee, for Appellant. Jimmie Lynn Ramsaur, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

———————

### OPINION

———————

FEIKENS, District Judge.

## I.   INTRODUCTION

Defendant-Appellant, Lawrence Orlando, Sr., was convicted by a jury for Conspiracy to Use Mail and Facilities in Interstate Commerce in Aid of Racketeering, in violation of 18 U.S.C. §371, and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. §1956(h). After sentencing, defendant appealed his sentence and conviction to this Court. This Court remanded his case for resentencing to determine the amount of laundered funds for which defendant should be held accountable. *United States v. Orlando*, 281 F.3d 586 (6th Cir. 2002). On remand, the district court resentenced defendant to sixty-three months imprisonment and two years supervised release, the same as defendant's original sentence.

Now defendant appeals the sentence imposed upon him on remand. First, defendant argues that the district court erred in applying on remand at defendant's resentencing the version of U.S.S.G. §2S1.1 which was in effect at the time of defendant's original sentencing. Defendant contends that the district court on remand should have applied the version of §2S1.1 in effect at the time of his resentencing. Second, defendant argues that even if the district court was correct in applying the version of §2S1.1 in effect at the time of his original sentencing, the evidence and factual determinations

of the district court do not support a three-point enhancement pursuant to §2S1.1.

We find that the district court on remand was correct in applying the version of §2S1.1 in effect at the time of defendant's original sentencing, as opposed to the version in effect at the time of defendant's resentencing. We also find that the district court's factual findings were not clearly erroneous. Accordingly, we AFFIRM defendant's sentence.

## II.  FACTUAL BACKGROUND

A detailed account of the facts underlying defendant Orlando's conviction is set forth in *Orlando*, 281 F.3d 586 (6th Cir. 2002). Therefore, a full statement of the facts of the case need not be repeated. The following additional facts are relevant on appeal.

### A.  Procedural Background and Sentencing Guidelines

Subsequent to defendant Orlando's conviction, on September 15, 2000, the district court sentenced defendant to sixty-three months imprisonment and two years supervised release. This sentence was based on the district court's application of §2S1.1 of the Sentencing Guidelines, pursuant to which the district court calculated defendant's offense level as 26. The district court held defendant accountable for laundered funds in the amount of $449,655.62, and therefore enhanced defendant's base offense level of 23 by three points in order to arrive at the offense level of 26. Defendant objected to the amount of laundered funds for which he was held accountable, and appealed both his conviction and sentence.

On appeal, this Court held that the district court erred in enhancing Orlando's base offense level by three points pursuant to §2S1.1 "without making specific factual findings concerning the amount of laundered funds for which [Orlando] was accountable." *Orlando*, 281 F.3d at 601. For

example, the district court failed to make a specific determination as to when Orlando entered the conspiracy and failed to indicate the scope of criminal activity Orlando agreed to undertake. *Id*. at 601. This Court explained that "[a]lthough the evidence may justify holding Orlando accountable for [approximately] $449,000 of laundered money, the district court's failure to explain its factual determination requires us to remand the case for resentencing." *Id*. at 601. Therefore, we remanded the case for resentencing.

Between the date of defendant's original sentencing hearing, on September 15, 2000, and the date of defendant's resentencing hearing, on July 18, 2002, §2S1.1 of the Sentencing Guidelines was amended, effective November 1, 2001. At the time of defendant's sentencing, §2S1.1 provided for a three-point enhancement of a defendant's base offense level if the value of the laundered funds exceeded $350,000. §2S1.1(b)(2)(D). The amended version of §2S1.1 required an entirely different calculation to determine both a defendant's base offense level and whether an enhancement was appropriate, and would have resulted in a "drastically different" sentence for Orlando. (Govt.'s Mt. for Clarification, June 4, 2002.)

Therefore, on June 4, 2002, the Government filed a motion with this Court seeking clarification as to which version of §2S1.1 should apply on remand. The Government wanted to determine "whether the entire sentence ha[d] been vacated by [this Court] or whether the remand was for the limited purpose of determining the amount of laundered funds." (Govt.'s Mt. for Clarification, June 4, 2002.) By Order dated June 12, 2002, this Court denied the Government's motion. This Court explained that "the context of the filed opinion makes it obvious that the remand for resentencing is limited to determining the amount of laundered funds properly attributable to Orlando." (Order of Sixth Circuit, June 12, 2002.)

## B.   The District Court's Findings On Remand

On remand, the district court addressed two issues: (1) whether the amended version of §2S1.1 of the Guidelines should apply on remand to defendant's resentencing; and (2) the amount of laundered funds for which to hold Orlando accountable. (Resent. Tr. p. 534.)   First, the district court determined that the remand was "limited to determining the amount of laundered funds properly attributable to Orlando," and that "the limited remand require[d] it to apply the guidelines that were in effect at the time of the original sentencing...on September 19th, 2000." (Resent. Tr. p. 549-50.)   Second, the district court made particularized findings regarding Orlando's involvement in the conspiracy, and determined that Orlando was accountable for at least $408,005.62 in laundered funds. (Resent. Tr. p. 580.)

The district court made the following factual determinations:   (1) Orlando entered the money laundering conspiracy in early 1996; (2) Orlando agreed to jointly undertake participation in the operation of Dawn's and the conspiracy to launder money from early 1996 through November of 1999; (3) Orlando knew from the beginning of his relationship with Daniels that Dawn's was a front for prostitution; (4) Orlando made improvements to the business in 1996 and in 1997, without receiving any monetary payment; (5) Orlando picked up envelopes of money from Dawn's at least twenty-five times during 1997 and 1998; (6) from August of 1999 to November of 1999 Orlando handled the payment of expenses for Dawn's during the period that Daniels was incarcerated; (7) Orlando benefitted from the business during his relationship with Daniels – "he lived with her, drove a truck supplied by her, she paid off his loans, [and] she paid for certain exotic trips"; and (8) during the time Orlando was involved in the conspiracy, the business

generated funds in the minimum amount of $408,005.62.[1] (Resent. Tr. p. 579-582.)

Accordingly, the district court applied the version of §2S1.1 which had been applicable at the time of defendant's original sentencing, and resentenced defendant to sixty-three months imprisonment and two years supervised release – a sentence identical to the one previously imposed.   (Amended Judgment, July 22, 2002.)   Defendant now appeals his resentencing.

## III. ANALYSIS

### A.   Standards of Review

A district court's determination as to whether a remand is general or limited is reviewed *de novo*. *United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003) (citing *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997)).   A district court's findings of fact at sentencing are reviewed for clear error, while a district court's interpretation of the Sentencing Guidelines are reviewed *de novo*. *United States v. Canestraro*, 282 F.3d 427, 431 (6th Cir. 2002).   A sentencing court's "factual findings concerning the amount of loss for which the defendant is to be held accountable as relevant conduct pursuant to Sentencing Guideline section 1B1.3(a)(1)" is reviewed for clear error. *United States v. Prince*, 214 F.3d 740, 769 (6th Cir. 2000).

---

[1]This figure is based on the district court's review of business tax receipts from the relevant period of time.   The court noted that it found the testimony of Joan Gould credible when she testified that the figures were under reported and that they required doubling to be accurate. Based on this and "many weeks of testimony," the court felt it could "reasonably conclude that these dollar numbers [were] quite conservative." (Resent. Tr. 583.)

### B. On Remand the District Court Was Correct in Applying the Sentencing Guidelines in Effect at the Time of Defendant's Original Sentencing

#### 1. The Remand Was Limited to Determining the Amount of Laundered Money for Which Defendant Was Accountable

Pursuant to 28 U.S.C. §2106, appellate courts have the authority to grant either general or limited remands.[2] *Moore*, 131 F.3d at 597. On a general remand, the district court may resentence a defendant *de novo*. *Id*. (citing *United States v. Hebeka*, 89 F.3d 279, 284 (6th Cir. 1996)). However, on a limited remand a district court's authority is constrained "to the issue or issues remanded." *Moore*, 121 F.3d at 598. To constitute a limited remand, the appellate court "must convey clearly [its] intent to limit the scope of the district court's review." *United States v. Campbell*, 168 F.3d 263, 267 (6th Cir. 1999). The limiting language defining the scope of an appellate court's mandate may be found "anywhere in an opinion or order, including a designated paragraph or section, or certain key identifiable language." *Id*. at 267.

Under the mandate rule, "a district court is bound to the scope of the remand issued by the court of appeals." *Campbell*, 168 F.3d at 265. This Court has emphasized that "the trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (citations omitted). Stated another way, "the mandate rule instructs that the district court is without authority to expand its inquiry

---

[2]28 U.S.C. §2106 states: "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the case and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

beyond the matters forming the basis of the appellate court's remand." *Campbell*, 168 F.3d at 265.

In the present case, this Court clearly conveyed in its Opinion of February 25, 2002 that its remand for resentencing was limited to determining the amount of laundered money for which defendant Orlando should be held accountable. In our Opinion, this Court held that the district court had erred by failing to make "specific findings to justify holding Orlando accountable for $449,000 of laundered money." *Orlando*, 281 F.3d at 601. We did not take issue with the sentence in its entirety, nor question the application of §2S1.1, apart from the lack of factual findings supporting a three-point enhancement under §2S1.1. Rather, we explained that though "the evidence may justify holding Orlando accountable for $449,000 of laundered money, the district court's failure to explain its factual determination requires us to remand the case for resentencing." *Id*. at 601.

In addition, in this Court's Order of June 12, 2002, we stated clearly that our remand was a limited one. This Court issued the Order in response to a Motion for Clarification by the Government, in which the Government pointed out that §2S1.1 had been amended since the time of defendant's original sentencing and that the results under the new version would vary dramatically. Rather than engaging in a discussion as to whether the amended version of §2S1.1 should apply on remand, this Court summarily denied the Government's Motion. By way of explanation, we stated unequivocally that "the context of the filed opinion makes it obvious that the remand for resentencing is limited to determining the amount of laundered funds properly attributable to Orlando." (Order of Sixth Circuit, June 12, 2002.)

Under the mandate rule, because this Court conveyed clearly that the remand for resentencing was limited to determining the amount of laundered funds for which Orlando was accountable, the district court's authority on remand was

limited to resolving that issue alone. Because the remand was a limited one, the district court lacked the authority to review defendant's sentence *de novo* under the amended version of §2S1.1. Therefore, the district court was correct in limiting its analysis to determining the amount of laundered funds attributable to Orlando and in applying the version of §2S1.1 which had been in effect at the time of defendant's original sentencing.

### 2. Section §1B1.11 of the Sentencing Guidelines

Defendant argues that a court on remand should apply the version of the Sentencing Guidelines in effect at the time of a defendant's resentencing. For this proposition, defendant relies upon §1B1.11 of the Guidelines, a section which does not support defendant's argument either on its face or by its reasoning. Section 1B1.11 provides that as a general rule a court must apply the version of the Guidelines in effect at the time a defendant is sentenced, unless this would violate the ex post facto clause of the United States Constitution. Section 1B1.11 states:

(a) The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced. (b)(1) If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.

The exception to the general rule arises only when ex post facto concerns are implicated at the time of sentencing, and in that case an earlier version of the Guidelines must be used. *See United States v. Holmes*, 975 F.2d 275, 278 (6th Cir. 1992) (*citing United States v. Nagi*, 947 F.2d 211, 213 n.1 (6th Cir. 1991)).

On its face, §1B1.11 says nothing about the issue presently before this Court. The relevant comparison at issue in §1B1.11 is between the Guidelines in effect at the time of a defendant's sentencing versus those in effect at the time of a defendant's relevant offense, not between the version of the Guidelines in effect at the time of resentencing versus those in effect at the time of a defendant's original sentencing. In addition, the cases interpreting §1B1.11 cited by defendant are not persuasive. *United States v. Cruz-Aceuedo*, 106 F.3d 402 (6th Cir. 1996), is an unpublished opinion and therefore not binding precedent, and *United States v. Clemons*, 999 F.2d 154 (6th Cir. 1993), upon which *Cruz-Aceuedo* relies, does not address a resentencing issue. Furthermore, the ex post facto concern underlying the exception to the general rule is not present at the resentencing stage, in a case like the present one, where a defendant seeks to have applied to his case advantageous post-appeal changes to the Guidelines.

An ex post facto problem occurs only where "the Guidelines in effect at the time of sentencing provide for a higher range than those in effect at the time the crime was committed." *United States v. Green*, 305 F.3d 422, 432 (6th Cir. 2002) (citation omitted). Where the Guidelines in effect at the time of resentencing are less severe than those applied to a defendant at the time of his original sentencing (assuming his original sentencing did not violate the ex post facto clause), no ex post facto problem exists at the resentencing stage. In the absence of an ex post facto danger, there is no justification to apply any version of the Guidelines other than the version applied at the time of a defendant's original sentencing. A contrary rule would allow defendants to benefit arbitrarily from the windfall of recently amended more lenient Guidelines, burden district courts unnecessarily, and undermine the goal of finality in the judicial process.

Finally, the recent enactment of 18 U.S.C. §3742(g), in 2003, has clarified that the correct approach for a district court to take on remand is to apply the Guidelines in effect at the time of a defendant's original sentencing. (Prosecutorial

Remedies and Tools Against the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub. L. No. 108-21, 117 Stat. 650 (2003)). In relevant part, §3742(g) provides that, where a case is remanded for resentencing, as in the present case, "the court shall apply the guidelines [...] that were in effect on the date of the previous sentencing of the defendant prior to the appeal..." This statute was enacted subsequent to the date of defendant's resentencing, and therefore does not apply to the present case. However, to the extent this statute clarifies what was prior to its enactment an open question, we refer to it as additional support for the course taken by the district court in the present case.

**C.  The Factual Findings Justifying a Three-Point Enhancement Under §2S1.1 Were Not Clearly Erroneous**

Defendant argues: (1) the district court failed to make particularized findings as to the date defendant entered the conspiracy; (2) the district court rendered erroneous findings of fact regarding the scope of the conspiracy; and (3) the evidence does not support the amount of money for which the district court held defendant accountable.

As stated above, a district court's findings of fact at sentencing are reviewed for clear error. *Canestraro*, 282 F.3d at 431. Under the clear error standard, a reviewing court "will not reverse a lower court's finding of fact simply because [it] 'would have decided the case differently.'" *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). Rather, to determine whether a district court has committed clear error, a reviewing court must ask "whether on the entire evidence it is left with the definite and firm conviction that a mistake has been committed." *Easley*, 532 U.S. 234 at 242 (2001) (citations omitted).

Defendant does not concede that he entered the conspiracy before August of 1999. However, defendant admits he started

dating Daniels in the beginning of 1996, (Sent. Tr. p. 437), and that he knew Dawn's was a massage parlor used as a front for prostitution within a short period of time. (Sent. Tr. p. 470.) Orlando admits that he transported sealed envelopes from Dawn's to Daniels approximately twenty-five times during 1997 and 1998, (Sent. Tr. p. 448), and that he made improvements at Dawn's between 1996 and 1997. (Sent. Tr. p. 455.) In addition, Orlando admits he signed a business license for Daniels in an attempt to open another spa. (Sent. Tr. p. 493). Orlando also admits his son provided security at Dawn's for a period of time, and that his daughter-in-law worked there as a manager. (Sent. Tr. p. 507). The evidence demonstrates that Orlando had knowledge of the business, aided the business at times, and personally benefitted from the success of the business. Based on this evidence, the district court's factual determinations regarding the date Orlando entered the conspiracy and the scope of Orlando's involvement are not clearly erroneous.

Finally, pursuant to §1B1.3 of the Sentencing Guidelines, base offense levels and specific offense characteristics are to be determined "in the case of jointly undertaken criminal activity" on the basis of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken activity, that occurred during the commission of the offense of conviction...." §1B1.3(a)(1)(B). Defendant argues that the evidence does not support the amount of funds for which the district court held Orlando accountable. Defendant's main argument is that as a result of his tumultuous on-again, off-again relationship with Daniels, defendant did not participate continuously in the conspiracy from 1996 until 1999. Defendant contends that during the fifty-six months that his relationship with Daniels went on, defendant was actually only with Daniels for twenty-four months. (Resent. Tr. p. 572.) However, in light of defendant's knowledge of the conspiracy, and the actions he took to aid the business, it was not clearly erroneous for the district court to have found Orlando accountable for the amount of funds laundered at

Dawn's during the period of Orlando's involvement with Dawn's (between 1996 and 1999).

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.