UNITED STATES of America,
Plaintiff–Appellee,

v.

Freddie PETERS, Defendant–
Appellant.

No. 03–5041.

United States Court of Appeals,
Sixth Circuit.

May 18, 2004.

450

Linda Harris, Asst. U.S. Attorney, U.S. Attorney's Office, Memphis, TN, for Plaintiff–Appellee.

Kemper B. Durand, Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, TN, for Defendant–Appellant.

Before KENNEDY, MARTIN, and ROGERS, Circuit Judges.

KENNEDY, Circuit Judge.

■ Defendant Freddie Peters ("defendant") was convicted on eight counts of making, presenting, and causing to be made and presented, false claims with the Internal Revenue Service ("I.R.S.") in violation of 18 U.S.C. §§ 287 and 2 ("false-claims convictions"), and on fourteen counts of unlawfully disclosing, using, and compelling the disclosure of the Social Security Account numbers of other persons in violation of 42 U.S.C. § 408(a)(8) and 18 U.S.C. § 2 ("Social–Security convictions"). The district court sentenced defendant to sixty months of imprisonment on his false-claims convictions and to eleven months of imprisonment on his Social–Security convictions, to be served consecutively for a total of seventy-one months of imprisonment, followed by three years of supervised release. Defendant appeals the district court's calculation of his sentence under the United States Sentencing Guidelines ("U.S.S.G.")[1] on several grounds.[2] For the reasons explained below, we AFFIRM defendant's sentence.

### I. Background

Defendant's convictions were based upon the following conduct. In 1997, Debra Coburn. Donna Johnson, Eterial Johnson, Falinisa Smith, Eleanor Stepheny, and Joyce Turner, mothers in defen-

---

1. Sentencing calculations relied upon the 2001 edition of the United States Sentencing Guidelines.

2. Defendant also purports to appeal his judgment of conviction on the grounds that there was insufficient evidence to sustain it, and that the district court committed plain error by permitting an I.R.S. agent to testify both as an expert and to prejudicial hearsay. However, defendant has presented no argument on these issues in his brief and, thus, has failed to preserve them for appeal. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir.2003) (holding that an appellant abandons an issue for

purposes of appeal where he fails to argue it in his briefs). In any event, we note that the record is replete with evidence sufficient to sustain each of defendant's convictions, and, even if the district court erred concerning the I.R.S. agent's testimony, as defendant contends, such error neither affected defendant's substantial rights nor seriously affected the fairness or integrity of his trial so as to constitute plain error. *See United States v. Vincent*, 20 F.3d 229, 233–34 (6th Cir.1994) (outlining the sufficiency-of-the evidence and plain-error review standards).

dant's Memphis, Tennessee, neighborhood, received remuneration—whether monetary or otherwise—from defendant for their children's Social Security information. Generally, as part of those transactions, defendant paid $100 per child in exchange for that information and the mothers' agreement to allow other individuals to claim their children as dependents for purposes of the 1996 federal tax year. Also in 1997, defendant informed Irabahima Bane, Alioune Camara, Baba Deme, Seydina Ba, Amandou Anne, and Mammadou Seck, African immigrants living in defendant's neighborhood, that they could receive tax refunds by listing children as "foster children" on their federal income tax returns. Defendant also informed Jade Woodall, an American-born citizen, of this tax advantage. At a rate of approximately $200 per child, defendant sold these individuals various children's Social Security information. Defendant instructed the taxpayers which particular tax return preparer to use—typically, Wanda Marion at the Memphis Currency Exchange—, and often transported them to that location and waited while the returns were being processed and filed. Each taxpayer's individual return listed the false dependent as a "foster child" so as to entitle the taxpayer to head-of-household filing status, a dependency exemption. and earned income credit. As the mothers testified, none of the taxpayers who claimed a child as a foster child on his federal income tax returns, in fact, was a foster parent, provided the requisite level of financial aid during the tax year, resided with the child, or even knew the child. Defendant repeated this fraudulent income tax scheme in 1998 for purposes of the 1997 tax year. However, defendant used a different tax return preparer so as to avoid detection. Defendant's fraudulent scheme cost the I.R.S. approximately $40,935.00.

## II. Analysis

We review a district court's interpretation of a sentencing guideline *de novo,* *United States v. Adu,* 82 F.3d 119, 124 (6th Cir.1996), and its factual determinations underlying an application of a sentencing guideline for clear error, *United States v. Jackson–Randolph,* 282 F.3d 369, 390 (6th Cir.2002). *See United States v. Caseslorente,* 220 F.3d 727, 734 (6th Cir.2000) (holding that we review for clear error a district court's factual determination of a defendant's role in an offense for purposes of applying U.S.S.G. § 3B1.1(a)); *Jackson–Randolph,* 282 F.3d at 390 (holding that we review for clear error a district court's application of an obstruction-of-justice enhancement under U.S.S.G. § 3C1.1); *United States v. Brown,* 332 F.3d 363, 375 (6th Cir.2003) (holding that we review for clear error a district court's factual determination of the conduct in which defendant engaged, but that we review *de novo* the district court's determination of whether that conduct constitutes "relevant conduct" for purposes of U.S.S.G. § 1B1.3(a)(2)); *United States v. Orlando,* 363 F.3d 596, 600–01 (6th Cir.2004) (holding that we review for clear error a district court's factual determination "concerning the amount of loss for which the defendant is to be held accountable as relevant conduct under …" [§ ]1B1.3(a)(1)); *United States v. Odom,* 199 F.3d 321, 323 (6th Cir.1999) (holding that we review for clear error a district court's factual determination as to whether prior cases were consolidated for sentencing under U.S.S.G. § 4A1.2(a)(2), and that we give the court "due deference" in its application of the Guidelines to that determination). A factual finding is clearly erroneous when, though there is evidence to support the finding, the reviewing court is "left with the definite and firm conviction that a mistake has been commit-

ted." *United States v. Ables,* 167 F.3d 1021, 1035 (6th Cir.1999).

## A. Role in the Offense

■ Defendant appeals the district court's determination that he had an aggravating role in his offenses for purposes of applying a four-point enhancement to his base offense level under U.S.S.G. § 3B1.1(a). Section 3B1.1(a) provides for such an enhancement where the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n.1).

In applying the § 3B1.1(a) enhancement, the district court found that "defendant was an organizer or leader of the criminal activity that involved five or more participants." As the district court reasoned, even without the participation of any of the African taxpayers, defendant's criminal activity involved five or more participants by virtue of the mothers who received remuneration from defendant for their children's Social Security numbers. However, the district court also clarified that, even though the African taxpayers might not have realized the full ramifications of their actions under the American tax system and they were not criminally charged, they are not automatically excluded as "participants" under § 3B1.1(a) because, in most cases, they had sufficient knowledge of their actions so as to be criminally responsible.

Defendant contends that his criminal activity involved only the use of the services of several innocent people in that the African taxpayers were not criminally culpable and, thus, not "participants" for purposes of § 3B1.1(a). Defendant claims that the government has consistently characterized defendant as the sole criminal while characterizing the African taxpayers as "innocent dupes" based upon their immigrant status, their difficulty understanding and speaking the English language, and their inexperience with the American tax system. Even if defendant's contentions were true, however, we agree with the district court that defendant's criminal activity involved five or more participants by virtue of the American-born taxpayer, Jade Woodall, and the mothers who received remuneration from defendant for their children's Social Security numbers. Debra Coburn. Donna Johnson, Eterial Johnson, Falinisa Smith, Eleanor Stepheny, and Joyce Turner.[3]

Defendant argues that the government did not criminally charge the taxpayers, the tax-return preparer, or the mothers who profited from their children's Social Security information despite the recommendation of the I.R.S. that the government bring a charge of conspiracy to defraud the government under 18 U.S.C. § 286. However, because an individual need not have been convicted to be a "participant" for purposes of U.S.S.G. § 3B1.1(a), as its commentary makes clear, one may reasonably infer that an individual also need not have been criminally charged to be such a "participant." Defendant further argues that 18 U.S.C. § 287, the statute upon which his false-claims convictions rest, requires the involvement of only one person while 18 U.S.C. § 286, the conspiracy statute under which the government declined to prosecute defendant, requires more than one criminal actor. Presumably, defendant is

---

**3.** We note that Geraldine Williams testified that she received monetary and other remuneration from Donna Coburn, whom defen- dant recruited to solicit other mothers' participation in the fraudulent tax scheme, for her child's Social Security information.

implicitly arguing that one should infer from this act of prosecutorial discretion a lack of evidence incriminating individuals other than defendant. However, the validity of such an inference is highly questionable given that the exercise of prosecutorial discretion often hinges upon many factors in addition to the ability to succeed at trial. In any event, as discussed above, the record is replete with evidence that negates such an inference here, even if it were valid generally. The district court did not clearly err in finding that defendant "was an organizer or leader of a criminal activity that involved five or more participants" for purposes of § 3B1.1(a) and, thus, in applying that enhancement to defendant's base offense level.

### B. Obstruction of Justice

█ Defendant appeals the district court's application of a two-point enhancement to his base offense level for obstruction of justice under U.S.S.G. § 3C1.1. Section § 3C1.1 provides for such an enhancement where, among other circumstances, the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation . . . of the instant offense of conviction, and . . . [where] the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct[.]" *See* U.S.S.G. § 3C1.1. comment. (n. 4(a)) (illustrating the conduct to which this enhancement would apply with "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so").

Here, in applying this obstruction-of-justice enhancement to defendant's sentence, the district court relied upon the trial testimony of Falinisa Smith ("Smith"), one of the mothers who received remuneration from defendant for her children's Social Security information. At trial, Smith testified that, after she informed defendant that I.R.S. agents had questioned her about African immigrants claiming her children as dependents on their federal income tax returns, defendant instructed her to tell the agents that she was dating the African taxpayers, and not to tell the agents that defendant was involved. According to Smith, defendant also informed her that he would deny any involvement in the matter, if questioned.

Defendant contends that the district court committed clear error in relying upon Smith's testimony—trial or otherwise—in applying a § 3C1.1 obstruction-of-justice enhancement because Smith's testimony was inherently unreliable due to her drug use at the time of the events to which she testified. Indeed, Smith testified at trial that she had been on drugs in 1996 and 1997. Moreover, in an earlier sentencing hearing, the district court declined to rely upon Smith's grand jury testimony in applying the § 3C1.1 enhancement because, in that testimony, Smith both admitted her drug use and was inconsistent as to whether defendant had encouraged her to lie to the I.R.S. during its investigation into the fraudulent tax scheme. Specifically, before the grand jury, Smith initially denied that defendant had instructed her to tell the agents that she was dating the Africans who had claimed her children on their tax returns, but, rather, testified that defendant had only told her that he would deny his involvement in the matter. Yet, upon being questioned about her statement to I.R.S. agents that defendant had instructed her to inform the I.R.S. that she had been dating the African taxpayers, Smith admitted that defendant had, in fact, done so.

The district court had presided over defendant's trial and, thus, had the opportunity to observe Smith's demeanor and to

judge her credibility while she testified. Smith's trial testimony was both clear and consistent as to how defendant had counseled her to lie to the I.R.S. for purposes of its investigation into defendant's fraudulent tax scheme. Although Smith admitted to using drugs in 1996 and 1997, there is no evidence in the record that she was on drugs at the time of this conversation with defendant so as to impair her ability to perceive or to recall that conversation accurately. Rather, the clarity and consistency of her trial testimony suggest otherwise. While Smith's grand jury testimony was internally inconsistent, portions of it were consistent with her trial testimony and, thus, corroborate that testimony. Therefore, notwithstanding Smith's admitted drug use, we cannot say that the district court clearly erred in finding credible Smith's trial testimony that defendant had encouraged her to lie to the I.R.S. and, thus, in applying the obstruction-of-justice enhancement to defendant's sentence based upon that testimony. *See Caseslorente*, 220 F.3d at 736 ("The credibility of witnesses is a matter for the trial court, and the court's determinations must be given substantial deference.").

### C. Relevant Offense Conduct

Defendant appeals the district court's inclusion in its determination of defendant's relevant offense conduct under U.S.S.G. § 1B1.3 of the monetary loss caused by defendant's filing, in 1996, of fraudulent income tax returns for the 1994 and 1995 tax years. U.S.S.G. § 1B1.3(a)(1)(A) provides that specific offense characteristics relevant to the defendant's offense level shall be determined based upon "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that occurred during the commission of the offense of conviction, in preparation for that offense,

or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(2) provides that specific offense characteristics relevant to defendant's offense level shall also be determined based upon "all acts and omissions described in subdivision[ ] (1)(A) ... that were part of the same course of conduct or common scheme or plan as the offense of conviction" where, and only where, those offenses are "of a character for which § 3D1.2(d) would require grouping of multiple counts." *See* U.S.S.G. § 1B1.3 comment. (n. 3) (explaining that this provision "applies to offenses for which grouping of counts would be required under § 3D1.2(d) had the defendant been convicted on multiple counts" and that defendant need not, in fact, have been convicted of such offenses for it to apply). U.S.S.G. § 3D1.2(d) provides that "[c]ounts involve substantially the same harm" for purposes of grouping those counts into a single group "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss ... or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." U.S.S.G. § 2B1.1(b)(1)(D) and (E), the Sentencing Guideline that covers defendant's offenses, provides for a six-point enhancement to a defendant's base offense level of 6, as part of his specific offense characteristics, where the loss for which the defendant is responsible exceeds $30,000 but does not exceed $70,000.

The record demonstrates that, in 1996, defendant filed tax returns for the years of 1994 and 1995 upon which he fraudulently reported two of his nieces as his daughters so as to receive income tax refunds in the aggregate amount of $4,879. Defendant argues that this conduct, which occurred in 1996, is not relevant conduct for purposes of § 1B1.3 because such relevant conduct

only includes those acts that defendant committed *during* the commission of the offenses of conviction, which began in 1997. Defendant further contends that, upon excluding his 1996 conduct, the total monetary amount of his relevant conduct for purposes of determining his offense level is $39,289. However, as the district court correctly observed and as defendant admitted at oral argument, his objection to the inclusion of this conduct, even if successful, would not impact his sentence under the Guidelines; rather, under § 2B1.1(b)(1)(D) and (E), his offense level based upon his specific offense characteristics would remain the same. Because this issue is admittedly moot, we, therefore, decline to consider it on appeal.

### D. Criminal History

■ Defendant appeals the district court's decision not to treat seven prior armed robbery convictions as two sets of "related cases" and, thus, two prior sentences under U.S.S.G. § 4A1.2(a)(2) for purposes of calculating defendant's criminal history category. Defendant contends that, because these seven prior convictions constitute only two prior sentences under § 4A1.2(a)(2), defendant should have received only six criminal history points for these two prior sentences, rather than twenty-one criminal history points for each of the seven cases' individual sentences, under § 4A1.1(a). Defendant concedes that he would have received an additional three points under U.S.S.G. § 4A1.1(f) if these prior cases for crimes of violence were treated as related under § 4A1.2(a)(2); thus, he argues that he should have received only nine criminal

history points, which, under U.S.S.G. § 5A, would have given him a criminal history category of IV, resulting in a sentencing range of forty-one to fifty-one months of imprisonment.[4] Because defendant had thirteen or more criminal history points based, in part, upon the district court's assessment of twenty-one criminal history points for defendant's seven prior armed-robbery sentences, defendant received, under U.S.S.G. 5A, a criminal history category of VI, resulting in a sentencing range of fifty-seven to seventy-one months of imprisonment.

U.S.S.G. § 4A1.1(a) provides for the addition of three criminal history points for "each prior sentence of imprisonment exceeding one year and one month." Section 4A1.2(a)(2) provides, in relevant part: "Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a)...." Commentary to § 4A1.2 explains the term "related cases" as follows:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.

U.S.S.G. § 4A1.2 comment. (n. 3).

On February 23, 1979, a trial court in Tennessee sentenced defendant to twenty

---

4. Because defendant has not challenged three additional criminal history points that the district court attributed to defendant under U.S.S.G. §§ 4A1.1(d) and (e), he would, in actuality, have had twelve criminal history points, which would have given him a criminal history category of V, resulting in a sen-

tencing range of fifty-one to sixty-three months of imprisonment. See U.S.S.G. § 5A. In any event, it is clear that defendant's challenge to his criminal history category based upon § 4A1.2(a)(2), if successful, would lower the Sentencing Guidelines' range for his sentence.

years of imprisonment, to be served concurrently, for each of four robberies with a deadly weapon to which he had pleaded guilty.[5] The indictments for those crimes alleged the following: 1) on August 28, 1978, defendant robbed Wallace Sanders and Stephanie Washington with a pistol; 2) on August 30, 1978, defendant robbed Louise Gatlin with a pistol; 3) between August 30, 1978, and September 1, 1978, defendant and Pierre Andre Brown robbed Ekubai Yohannes with a pistol; and 4) on September 3, 1978, defendant robbed Gloria Lewis with a shotgun. Defendant claims that these prior armed robbery cases are related so as to constitute a single prior sentence under § 4A1.2(a)(2) because the government returned the separate indictments for each of these cases on the same date; defendant signed only one petition for entry of a guilty plea on all of these cases; the trial court entered only one order accepting defendant's guilty plea on all of these cases: the trial court sentenced defendant on all of these cases on the same day; and the sentences for these convictions ran concurrently with each other for a total of twenty years of imprisonment.

The district court held that the cases from which these prior sentences arose are not related under § 4A1.2(a)(2). The court reasoned that all of the offenses underlying the prior sentences were "serious violent offenses occurring on different dates with different victims"; the underlying offenses were charged under different indictment numbers; and separate judgments were imposed as to each conviction. The district court also found that, although the trial court entered only a single order

on defendant's change of plea for all of these cases, that order did not consolidate them into a single case.

As defendant implicitly acknowledges, the four armed robberies involved in these prior cases did not occur on the same occasion so as to render them related. *See* U.S.S.G. § 4A1.2 comment. (n. 3); U.S.S.G. § 4A1.1(f) (stating that it does not apply where the prior sentence for crimes of violence "are considered related because the offenses occurred on the same occasion"). Moreover, defendant does not argue that these four prior armed robberies "were part of a single common scheme or plan" so as to constitute related cases. *See* U.S.S.G. § 4A1.2 comment. (n. 3); *United States v. Irons*, 196 F.3d 634, 638–39 (6th Cir.1999)(holding that, as to whether the defendant's prior convictions were part of a "single common scheme or plan" so as to be related under U.S.S.G. § 4A1.2(a)(2), defendant has the burden of establishing that those prior offenses were jointly planned or that the commission of one entailed the commission of the other). As the district court correctly noted, all of the armed robberies occurred on different dates with different victims. Moreover, only one of those armed robberies involved an accomplice. Rather, as shown above, the gist of defendant's argument for why these four cases are related under § 4A1.2(a)(2) is that they were consolidated for purposes of sentencing. However, the district court did not clearly err in finding that they were not so consolidated based upon the separate indictments under which the cases were charged, the trial court's entry of separate judgments in

5. While defendant was also convicted of assault with the intent to commit a robbery with a deadly weapon, this conviction's sentence of five years of imprisonment ran concurrently with the twenty-year concurrent sentences for the four armed robbery convictions. More-

over, this attempted robbery with a deadly weapon was joined to one of these armed robbery convictions such that the district court only counted them as one prior sentence.

those cases, and the lack of a consolidation order.[6] *See United States v. Carter,* 283 F.3d 755, 758 (6th Cir.2002) (holding that, even though the state trial court rendered its judgments in the defendant's prior cases on the same day with their sentences to run concurrently, the district court did not clearly err in finding that those prior cases were not consolidated for sentencing due to cases' separate indictments and judgments and the absence of a consolidation order); *Odom,* 199 F.3d at 324 (holding that the defendant's prior cases were not consolidated for sentencing because they were under separate indictments, carried different case numbers, and resulted in separate, yet concurrent, sentences).

On November 20, 1986, a Tennessee trial court sentenced defendant to twenty-five years of imprisonment, to be served concurrently, for each of three robberies with a deadly weapon to which he had pleaded guilty. The separate indictments for those convictions alleged the following: 1) on June 2, 1986, defendant, John Bland, and Nathaniel Otis robbed Kevin Gibbs with a pistol; 2) on June 7, 1986, defendant and Keith Brown robbed Sheila Moore and Tamara Levy with pistols; and 3) on June 18, 1986, defendant and John Bland committed an armed robbery. Defendant claims that these prior cases are related so as to constitute a single prior sentence under § 4A1.2(a)(2) because the grand jury returned the indictments on these cases at the same time; defendant pleaded guilty to all of these charges on the same

day; the trial court sentenced defendant on all of these cases on the same day; and the sentences for these convictions ran concurrently with each other for a total of twenty-five years of imprisonment.

The district court held that cases from which these prior sentences arose are not related under § 4A1.2(a)(2). The district court reasoned that all of the offenses underlying these prior cases were serious violent offenses occurring on different dates with different victims and accomplices: the underlying offenses were charged under distinct indictment numbers: separate judgments were imposed in each case; and there was no order consolidating the cases for sentencing. As with his four, 1978 armed-robbery sentences, defendant argues, in essence, that the cases underlying his three, 1986 armed-robbery sentences are related under § 4A1.2(a)(2) on the ground that they were consolidated for sentencing. However, the district court did not clearly err in finding that they were not so consolidated based upon the separate indictments under which the cases were charged, the trial court's entry of separate judgments in those cases, and the lack of a consolidation order.[7] *See Carter,* 283 F.3d at 758; *Odom,* 199 F.3d at 324. In sum, the district court did not err in treating defendant's seven prior armed-robbery cases as unrelated under U.S.S.G. § 4A1.2(a)(2) and, thus, in calculating defendant's criminal history category based upon those seven distinct prior sentences.[8]

6. We note that, because defendant was arrested on the same day for all of his 1978 armed robberies, there were no intervening arrests to preclude those cases from being related under § 4A1.2(a)(2). *See* U.S.S.G. § 4A1.2 comment. (n. 3).

7. We note that, because defendant was arrested on the same day for all of his 1986 armed robberies, there were no intervening arrests to preclude those case from being treated as

related under § 4A1.2(a)(2). *See* U.S.S.G. § 4A1.2 comment. (n. 3).

8. Defendant challenges U.S.S.G. § 4A1.2(a)(2) on the ground that it potentially permits widely disparate treatment of defendants' prior criminal convictions based upon prosecutorial discretion in charging defendants, rather than the nature or gravity of the underlying offenses; while we have previous-

For the preceding reasons, we AFFIRM defendant's sentence.

ly recognized the legitimacy of such concerns, we have held that the remedy for such disparate treatment lies, not with us, but with the Sentencing Commission. *See Carter*, 283 F.3d at 758–61: *United States v. Hayes*, 62 Fed.Appx. 588, 589–90 (6th Cir.2003).