NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 11, 2007
Decided October 17, 2007

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 07-1173

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Western District of Wisconsin |
| *v.* | No. 05-CR-164-C-02 |
| JESSE M. RODRIGUES, *Defendant-Appellant.* | Barbara B. Crabb, *Chief Judge.* |

**ORDER**

Jesse Rodrigues was indicted for conspiring to distribute 500 grams or more of methamphetamine and entered a guilty plea pursuant to a written plea agreement. *See* 21 U.S.C. §§ 841(a)(1), 846. He now appeals the 292-month sentence imposed, arguing primarily that the district court considered unreliable evidence—witnesses statements reported in his PSR—in deciding to increase his sentence for possessing a weapon and being a manager or supervisor of the conspiracy, as well as in determining the quantity of drugs he was responsible for. We affirm.

## Background

The witness statements in his PSR revealed that Rodrigues supplied the methamphetamine in the drug conspiracy case. According to the statements of his co-conspirators and customers, he had several people working for him during the conspiracy who acted in the capacity of middlemen who handled drug transactions on his behalf or as enforcers sent to collect drug debts. Guns were an important part of the conspiracy—witnesses stated that Rodrigues would often accept guns as payment for drugs, and one witness stated that Rodrigues always carried a weapon. After his conviction, based on information received, the probation office recommended that Rodrigues receive two upward adjustments to his offense level—a two-level adjustment for possessing a weapon during the offense, *see* U.S.S.G. § 2D1.1(b)(1), and a three-level adjustment for being a manager or supervisor, *id.* § 3B1.1(b).

Rodrigues was asked twice by the district court if he wanted to challenge the accuracy of any of the facts supporting the adjustments at an evidentiary hearing or whether he simply wanted to challenge the application of the adjustments to the facts as set forth in the Presentence Investigation Report. On the first occasion he asked for more time to decide, and the court granted his request. Two weeks later Rodrigues informed the court that he did not want an evidentiary hearing. But all was not quite resolved. Two hours before his rescheduled sentencing hearing, Rodrigues submitted objections to the PSR challenging the accuracy of some of the facts in the PSR as well as the application of the guidelines to those facts. The district court asked Rodrigues's counsel to clarify the nature of his challenge once again, and he assured the court that he wanted to challenge only the application of the adjustments to the facts in the PSR. The court then asked him if it could accept the facts in the PSR as true, and counsel concurred. The court decided that the facts in the PSR supported the application of both adjustments and increased Rodrigues's sentence accordingly. At no time did Rodrigues challenge the drug quantity calculated in the PSR, which was accepted by the district court.

## Analysis

Rodrigues's principal argument on appeal is a general challenge to the reliability of the evidence used to support the adjustments under U.S.S.G. §§ 2D1.1(b)(1) and 3B1.1(b). He contends that the evidence is unreliable because unspecified statements in the PSR consist of hearsay or were made by his potentially biased co-conspirators.

The government correctly maintains that Rodrigues waived rather than forfeited this argument in the district court when, on two separate occasions, he denied that he had any intention of challenging the accuracy of the facts in the PSR

on which the adjustments are based.  Waiver is the intentional relinquishment of a known right and precludes appellate review while forfeiture is the failure to assert a right and allows for plain-error review.  *United States v. Charles*, 476 F.3d 492, 495 (7th Cir. 2007).

The record here indicates that Rodrigues intentionally relinquished a known right.  He did not simply overlook the possibility of challenging the facts in the PSR.  On the contrary, he considered this possibility and rejected it in favor of a different argument.  For example, the court gave him a two-week continuance for the express purpose of deciding whether he wanted to challenge the facts in the PSR or merely the application of the guidelines to those facts, and he responded that he wanted to pursue the latter course.  Then, at the sentencing hearing, Rodrigues clarified even further that he intended to forgo a factual challenge to the PSR.  First, when the court pointed out that Rodrigues's objections had been submitted so late that the government did not have time to prepare, and much less call, witnesses to support its version of the facts, Rodrigues's lawyer asserted that the government did not need to put on witnesses because he intended to assume the truthfulness of all the facts in the PSR and argue only that those facts did not support the adjustments applied for his possession of a weapon and being the leader or organizer.  When the court then asked if it could accept every statement in the PSR as true, counsel answered in the affirmative.  Later counsel reiterated that Rodrigues would accept the facts in the PSR as true and proper and what was disputed was whether those facts warranted the adjustment.

The transcript also shows that Rodrigues's choice was based on strategic concerns.  *See United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005) (defendant who forgoes an argument for strategic reasons has waived that argument); *United States v. Cooper*, 243 F.3d 411, 416 (7th Cir. 2001) (same).  For example, counsel said that Rodrigues did not want to have a factual hearing on the adjustments because he did not want to risk losing a reduction in his offense level for acceptance of responsibility.  Having conceded strategically in the district court that the facts in the PSR are true, Rodrigues has waived his argument that the district court should not have considered those very same facts.

Rodrigues also appears to renew his assertion that, even assuming the facts in the PSR to be true, they do not warrant the application of the adjustments under U.S.S.G. §§ 2D1.1(b)(1) and 3B1.1(b).  His arguments on this point, however, are cursory.  For example, he does not explain why the adjustment for possessing a weapon should not apply to him, and the record supports the district court's decision to apply it.  According to statements in the PSR, he accepted guns as payment for the drugs he distributed and always had a gun with him.  This evidence shows that Rodrigues possessed guns during the offense, and that is all the government had to show to justify the imposition of the adjustment under

§ 2D1.1(b)(1). *See United States v. Berthiaume*, 233 F.3d 1000, 1003–04 (7th Cir. 2000) (evidence that defendant accepted gun at a discount to settle a drug debt sufficient to support application of adjustment).

As for the adjustment under § 3B1.1(b) for being a manager or supervisor of the conspiracy, Rodrigues points to the statements in the PSR that he handed off customers to other people in hopes of demonstrating that he was neither a manager nor a supervisor. His argument is at best confusing, for he appears to suggest that these people were really in charge of the sales because they dealt directly with the customers and thus were not controlled by him. But witnesses quoted in the PSR described two of the people whom Rodrigues handed customers off to as Rodrigues's workers or "guys." The inference from this is that Rodrigues was in charge of the sales and handed customers off to his underlings to avoid being caught dealing drugs. *See United States v. Johnson*, No. 05-4631, 2007 WL 1583993 at *1, 3 (7th Cir. June 4, 2007) (upholding application of adjustment for defendant who used another to deliver drugs, conduct drug transactions, and collect debts and noting that defendant's lack of direct contact with customer was consistent with being a supervisor because supervisors often want their underlings to be more exposed to liability). This conclusion is corroborated by witnesses' statements that Rodrigues employed other people to collect money owed to him for drugs.

Rodrigues also makes the conclusory assertion that one of his co-conspirators, Paul Horvatich, was above him in the conspiratorial hierarchy and was the real leader of the conspiracy. Even if this were true, Rodrigues did not have to be the highest person in the conspiracy to qualify for the manager or supervisor adjustment; he just had to have a supervisory role. *See United States v. Bjorkman*, 270 F.3d 482, 494–95, 497 (7th Cir. 2001) (per curiam) (upholding application of adjustment to defendant who was relatively low-level player in conspiracy but supervised one other person). Given the evidence that Rodrigues exercised control over several people within the conspiracy, the district court did not clearly err when it decided that he was a manager or supervisor.

Finally Rodrigues challenges for the first time the district court's drug-quantity determination. Specifically, he argues that the court did not particularize its findings explaining how it arrived at the quantity it chose. However, district courts can satisfy their burden to make particularized findings as to drug quantity by relying on the PSR. *United States v. Arroyo*, 406 F.3d 881, 889 (7th Cir. 2005); *United States v. Williams*, 272 F.3d 845, 852 (7th Cir. 2001). That is what the district court did here. Although the court did not explicitly state at the sentencing hearing that it adopted the PSR, it did do so in its written statement of reasons. The court also said at the sentencing hearing that the probation office calculated the guidelines correctly. Even Rodrigues admits in his brief that the court "adopted the assertions of [his] co-defendants as set forth in the presentence investigation

report." The PSR in turn supported its drug-quantity finding with a chart that includes the names of witnesses who said they bought methamphetamine from Rodrigues or his dealers, the dates on which they bought the drugs, and the quantities they purchased.

Rodrigues also reiterates that the district court based its drug-quantity finding on unreliable evidence. However, his only reason for challenging the reliability of the drug amounts recounted by the PSR is that they are based on statements provided by his potentially biased co-defendants. However, this fact alone does not make the information unreliable. It should be clear that we give great deference to a sentencing court's credibility decisions and will not overturn a sentencing decision just because the district court chose to believe testimony by someone with a motive to lie. *United States v. Johnson*, 227 F.3d 807, 813 (7th Cir. 2000).

For the above reasons, we AFFIRM.