NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0306n.06

Nos. 09-2248, 09-2249

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**May 11, 2011**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA

    Plaintiff-Appellee,

       v.

HUGO MANOSALVA-SANCHEZ

    Defendant-Appellant.

On Appeal from the United
States District Court for the
Eastern District of Michigan

Opinion

**BEFORE: GRIFFIN and KETHLEDGE, Circuit Judges; BERTELSMAN, District Judge.**[*]

**BERTELSMAN, District Judge:**

Defendant-Appellant, Hugo Manosalva-Sanchez, appeals the enhancement of his sentence. The district court applied a two-level enhancement to Manosalva-Sanchez's total offense level because he was determined to be an organizer, leader, manager or supervisor in any criminal activity, under the U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 3B1.1(C) (2008). As a result, Manosalva-Sanchez's final sentence was correspondingly increased.

Manosalva-Sanchez argues that the district court erred when it applied U.S.S.G. § 3B1.1(C) to his total offense level calculation.

For the reasons stated below, we **AFFIRM**.

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I.

According to his Presentence Investigation Report ("PSR"), Hugo Manosalva-Sanchez is a fifty-five year old Colombian national with no prior criminal history. During 2006, Manosalva-Sanchez became involved in the shipment of heroin from Colombia to Miami and Detroit. Through the use of confidential informants and undercover agents, the Drug Enforcement Administration ("DEA") was able to determine the identity of Manosalva-Sanchez.

During the course of the investigation, an undercover DEA agent had several phone conversations with Luz Nelly De Castro-Buelvas ("Luz Nelly"). Luz Nelly called the undercover agent claiming to be Manosalva-Sanchez's wife and she directed the undercover agent to wire money to several third-party accounts, ostensibly to pay for the shipments of heroin.

Manosalva-Sanchez was subsequently indicted for his shipment of large quantities of heroin to the United States. Luz Nelly was prosecuted as a co-defendant and she subsequently pled guilty to conspiracy to commit money laundering.

In addition to Luz Nelly, two other individuals were also involved in Manosalva-Sanchez's importation of heroin: Nicholas Ubillus and Jose Lopez-Gomez. During the course of the criminal scheme, Ubillus and Lopez-Gomez twice traveled to Detroit to meet an undercover federal agent in order to collect money owed to Manosalva-Sanchez for the sale of heroin. Both Ubillus and Lopez-Gomez were subsequently indicted for their participation in Manosalva-Sanchez's trafficking operation.

On May 12, 2009, Manosalva-Sanchez entered into a Rule 11 agreement with the United States whereby he agreed to plead guilty to two separate counts of importation of heroin. The Probation Office calculated Manosalva-Sanchez's total offense level as 33. In arriving at this

2

number, a two-point upward adjustment was made, pursuant to U.S.S.G. § 3B1.1(C), for Manosalva-Sanchez's role in the offense as an organizer or leader.

Based on the total offense level, and the inapplicability of the "safety valve" provision of U.S.S.G. § 5C1.2, which eliminates the statutory minimum, the sentencing range was between 120 and 135 months. Without the two-point upward adjustment for his role as an organizer or leader in the crime, Manosalva-Sanchez's sentencing range would have been 108 to 135 months, based on a total offense level of 31.

At the plea hearing, the court was informed that Manosalva-Sanchez was challenging the determination of his role as an organizer or leader in the commission of the crime. At his sentencing, Manosalva-Sanchez objected to the two-point enhancement under U.S.S.G. § 3B1.1(C).

The record reflects that Manosalva-Sanchez recruited Luz Nelly to collect drug money for him. The government also argued that the money collected by Luz Nelly eventually made its way back to Manosalva-Sanchez.

Manosalva-Sanchez claimed that he was merely a middleman who "was told what to do, how to do it, how to respond, and when to respond." Manosalva-Sanchez flatly denied ever having recruited Luz Nelly.

The district court disagreed, ultimately finding that Manosalva-Sanchez was subject to the two-point enhancement:

> The Court: I think I have sufficient evidence.
>
> Defense Counsel: Okay.
>
> The Court: In this case to show by a preponderance of the evidence factors necessary to establish that this defendant was in fact a leader. I don't know so much that he was an organizer, I'm not sure that

makes any difference, but he certainly was a leader in these transactions.

He in fact was in Colombia. He arranged to have the drugs sent here to the United States. He arranged to get the money. We know from, uhh, Luz Nelly the money was to go to him. And the question of whether he gave the actual account numbers or she had the account numbers to put the money in, I don't really think is of any import in this particular discussion, because he at the very least had one person, who was Luz Nelly, who was attempting to collect the drug money for him here in the United States.

And the whole thing, I agree with the government, would not have happened had he not been involved. And I think to say that he's just somebody in Colombia is foolhardy. These DEA agents talk about receiving information about him being involved in drugs, and lo and behold, they contact him and they get large sums, large amounts of drugs.

In terms of how much he gets in terms of this whole conspiracy, we don't know. We know that the money was due, we know from Luz Nelly, was to go back to him. Now whether he just got it to pay his suppliers, I don't know.

. . . .

*And considering all of these factors* and considering that it occurred not only here in Detroit with a confidential informant, it occurred in Florida with a separate confidential informant, shows me *that he is dealing with probably multiple other people but certainly at least one other person* to be a leader. So I think that he is in fact subject to the two point enhancement.

(emphasis added).

At the conclusion of the sentencing hearing, the court inquired if there were "any objections to the sentence that have not been previously placed on the record." The response was that there were none.

4

Manosalva-Sanchez was sentenced to 120 months of prison time on each of the two counts of importation of heroin, with the sentences to be served concurrently. On September 25, 2009, Manosalva-Sanchez filed a timely Notice of Appeal.

**II.**

When a district court's application of a sentencing enhancement under U.S.S.G. § 3B1.1 is appealed, this court applies a mixed standard of review. In such cases, this court applies a clearly erroneous standard to findings of fact and a de novo standard to the conclusions of law. *United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009) (citing *United States v. Moncivais*, 492 F.3d 652, 660 (6th Cir. 2007)).

Under the clear error standard, a reviewing court will not reverse a lower court's findings of fact simply because it would have decided the case differently. *United States v. Orlando*, 363 F.3d 596, 603 (6th Cir. 2004). Rather, a reviewing court must ask whether on the entire evidence the court is left with the definite and firm conviction that a mistake has been made. *Id.*

In *Buford v. United States*, 532 U.S. 59, 64 (2001), the Supreme Court held that review of a sentence enhancement under U.S.S.G. § 4B1.2 should be conducted with deference to the district court rather than on a de novo basis. However, this Court has "found it unnecessary to determine whether *Buford* requires us to alter the standard of review we apply in reviewing § 3B1.1 enhancements." *Moncivais*, 492 F.3d at 660 (quoting *United States v. McDaniel*, 398 F.3d 540, 551 n.10 (6th Cir. 2005)).

**A.**

At issue was whether there was any evidence in the record to support the application of a two-level enhancement under U.S.S.G. § 3B1.1(C) to Manosalva-Sanchez's total offense level. For the reasons stated below, this court finds that the enhancement was appropriate.

According to U.S.S.G. § 3B1.1, the defendant's role in the offense can result in an increase of the offense level as follows:

> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
>
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
>
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

The crux of Manosalva-Sanchez's argument is that the government failed to show, by a preponderance of the evidence, that he exerted control over at least one participant in the commission of his crimes. *See* U.S.S.G. § 3B1.1 cmt. n. 2 (2008). At the nucleus of that argument is the disputed role played by Luz Nelly.

At sentencing, the government steadfastly maintained that Manosalva-Sanchez recruited Luz Nelly to collect drug money for him. Manosalva-Sanchez vehemently disputes the government's assertion. Luz Nelly was indicted for her involvement in the trafficking scheme and she subsequently pled guilty.

At Manosalva-Sanchez's sentencing, there was some discussion of Luz Nelly's testimony from her earlier Rule 11 hearing. ("You heard the testimony of Luz Nelly when she pled before

6

Your Honor."). Clearly, the district court relied, in part, on that earlier testimony to find that Manosalva-Sanchez was subject to the two-level enhancement under § 3B1.1. Manosalva-Sanchez argues that the district court's use of Luz Nelly's plea testimony for the U.S.S.G. § 3B1.1 enhancement was improper, but no such objection was made at the sentencing hearing.

The argument fails. "In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial." U.S.S.G. § 6A1.3 cmt. background (2008); *United States v. Silverman*, 976 F.2d 1502, 1512 (6th Cir. 1992). "A district court is indeed permitted to rely on testimony presented at a related proceeding, so long as there are sufficient indicia of reliability." *Logan v. United States*, 208 F.3d 541, 544 (6th Cir. 2000) (citations omitted).

Furthermore, Manosalva-Sanchez conveniently ignores the fact that two other individuals were also involved in his criminal scheme. According to the PSR, on two separate occasions, Ubillus and Lopez-Gomez, both traveled to Detroit to meet an undercover federal agent in order to collect money owed to Manosalva-Sanchez. Manosalva-Sanchez did not object to these statements contained in the PSR.

A district court may make its findings of fact by adopting the presentence investigation report. *United States v. Levy,* 250 F.3d 1015, 1018 (6th Cir. 2001); *United States v. Ward*, 190 F.3d 483, 492 (6th Cir. 1999). "At sentencing, the court may accept any undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). "The district court is allowed to accept as true all factual allegations in a presentence report to which the defendant does not object." *United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004) (quoting *United States v. Levy*, 250 F.3d 1015, 1018 (6th Cir. 2001)). *See also United States v. Freeman*, --- F.3d ----, No. 09-4158, 2011 WL 1226091, at *6 (6th Cir. Apr. 4, 2011) (noting that the district court need not make

7

independent findings outside of the PSR when the facts contained therein are not disputed). "[A] failure to object to the presentence report waives any future objections." *Ward*, 190 F.3d at 492.

The district court thoroughly reviewed all the pertinent facts with counsel at the sentencing hearing. The court based its ruling on its interpretation of the facts taken as a whole, including reasonable inferences it was entitled to draw from them.

Even if there were some deficiency in the district court's determination that Manosalva-Sanchez supervised or otherwise managed Luz Nelly's activities, any such flaw would not vitiate the fact of Ubillus' and Lopez-Gomez's involvement in the drug trafficking scheme. There is no dispute that Ubillus and Lopez-Gomez twice traveled to Detroit to collect drug money for Manosalva-Sanchez. That alone is sufficient to justify the application of the U.S.S.G. § 3B1.1(C) enhancement.

There are numerous cases finding an enhancement appropriate where a defendant employed others to collect drug money. *See United States v. Hamilton*, 587 F.3d 1199, 1222 (10th Cir. 2009) (upholding enhancement where defendant directed the actions of several individuals including one who helped defendant to collect drug money); *United States v. Rodrigues*, 251 F. App'x 358, 361 (7th Cir. 2007) (holding enhancement to be proper where defendant employed others to collect drug money); *United States v. Green*, 210 F. App'x 401, 402 (5th Cir. 2006) (holding upward adjustment to be appropriate where defendant used another person as a "runner" to distribute drugs and collect money from street-level dealers); *United States v. Henley*, 360 F.3d 509, 517 (6th Cir. 2004) (holding enhancement to be proper where defendant employed several other individuals to help him collect drug debts); *United States v. Mendoza*, 341 F.3d 687, 694 (8th Cir. 2003) ("The record supports the court's conclusion that Mendoza was a leader or organizer. . . . Mendoza hired Agee to drive Mendoza around, collect money and deliver drugs.").

8

**III.**

Therefore, we hold that no clear error was committed by the district court when it applied a two-level enhancement to Manosalva-Sanchez's total offense level, thereby resulting in a longer prison sentence.

AFFIRMED.