RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0182p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

  *Plaintiff-Appellee*,

*v.*

NORMAN DAVID WEST,

  *Defendant-Appellant*.

No. 19-6106

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:18-cr-00144-4—Gregory F. Van Tatenhove, District Judge.

Decided and Filed:  June 12, 2020

Before:  GILMAN, KETHLEDGE, and MURPHY, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Edward M. Thompson, THOMPSON LAW OFFICE, Lexington, Kentucky, for
Appellant.  Charles P. Wisdom, Jr., Lauren Tanner Bradley, UNITED STATES ATTORNEY'S
OFFICE, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

  RONALD LEE GILMAN, Circuit Judge.  Norman David West pleaded guilty to
knowingly and intentionally distributing methamphetamine, in violation of 21 U.S.C.
§ 841(a)(1).  At West's sentencing hearing, the district court imposed a sentence of 40 months'
imprisonment.

West now appeals his sentence.  He argues that the district court incorrectly applied the two-level enhancement under United States Sentencing Guidelines (U.S.S.G.) § 2D1.1(b)(1) for the possession of a firearm during a drug-related offense.  West also contends that the 40-month sentence was unreasonable under the factors enumerated in 18 U.S.C. § 3553(a).  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

Law enforcement in Madison County, Kentucky began investigating West for distributing methamphetamine in November 2017.  In February 2018, they used a confidential informant to buy methamphetamine from West in a Walmart restroom.  The confidential informant purchased 14.18 grams of methamphetamine from West in exchange for $300.

Two months later, in April 2018, law enforcement arranged a controlled buy from West using the same confidential informant.  This time, the informant met West inside a Meijer supermarket restroom.  West gave the informant what later proved to be 116.112 grams of simulated methamphetamine—Epsom salts—for $900.

Upon exiting the Meijer supermarket, West entered the rear passenger side of a vehicle in which the driver's seat was occupied by Erroll Johnson.  Erroll Johnson's romantic partner, Jeanetta Johnson, sat in the front passenger seat.  (Erroll Johnson and Jeanetta Johnson share the same last name but are unrelated.)  Law enforcement stopped and searched the vehicle, discovering a Glock .22 semiautomatic pistol under the front passenger seat.

The investigation ultimately led to two charges being brought against West in an indictment:  one for knowingly and intentionally distributing methamphetamine in February 2018, in violation of 21 U.S.C. § 841(a)(1), and the other for being a felon in possession of a firearm in April 2018, in violation of 18 U.S.C. § 922(g)(1).  West pleaded guilty to the methamphetamine-distribution charge, but not to the felon-in-possession charge.  The government then moved to dismiss the felon-in-possession charge as part of the plea agreement with West.

Even though West did not plead guilty to possessing a firearm during the April 2018 transaction, the issue of the gun became relevant at sentencing. The district court determined that West's base offense level should be increased by two levels pursuant to U.S.S.G. § 2D1.1(b)(1) because a firearm was possessed in relation to West's drug-related offense. Factoring in this enhancement, the recommended Guidelines range was a sentence of between 37 and 46 months of imprisonment. The district court imposed a within-Guidelines sentence of 40 months.

West appeals the application of the U.S.S.G. § 2D1.1(b)(1) enhancement to his sentence, arguing (1) that the district court abused its discretion in determining that he possessed the gun found in the vehicle after the April 2018 transaction, and (2) that the transaction was not "relevant conduct" under U.S.S.G. § 1B1.3(a)(2). He also contends that the district court did not adequately consider the factors enumerated under 18 § U.S.C. 3553(a) in determining the 40-month length of his sentence.

## II. ANALYSIS

### A. Standard of review

We review findings of fact made at sentencing under the clear-error standard. *United States v. Orlando*, 363 F.3d 596, 600 (6th Cir. 2004) Under this standard, "a reviewing court must ask whether on the entire evidence it is left with the definite and firm conviction that a mistake has been committed." *Id.* at 603 (citation and internal quotation marks omitted). We review the district court's interpretation of the Sentencing Guidelines de novo. *Id.* at 600.

Challenges to the substantive and procedural reasonableness of a defendant's sentence are reviewed under the abuse-of-discretion standard. *United States v. Rayyan*, 885 F.3d 436, 440, 442 (6th Cir. 2018). When a sentence falls within the range recommended by the Sentencing Guidelines—as did West's—we presume that the sentence was reasonable. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

**B.      The enhancement under U.S.S.G. § 2D1.1(b)(1)**

U.S.S.G. § 2D1.1(b)(1) authorizes district courts to apply a two-level enhancement to the offense level for a drug-related conviction "[i]f a dangerous weapon (including a firearm) was possessed." "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.11(A).

"To apply the enhancement under section 2D1.1(b)(1), the government must establish that (1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense." *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996) (citation and internal quotation marks omitted). These elements must be proven by a preponderance of the evidence. *United States v. McCloud*, 935 F.3d 527, 531 (6th Cir. 2019).

As to the first element of whether a weapon was possessed, this is a factual finding that we review under the clear-error standard. *United States v. Pryor*, 842 F.3d 441, 452 (6th Cir. 2016). "Constructive possession of an item is the ownership, or dominion or control over the item itself, or dominion over the premises where the item is located." *Hill*, 79 F.3d at 1485 (citation and internal quotation marks omitted).

Regarding the second element of whether the possession of a weapon occurred during the commission of the drug offense, this court has clarified that the weapon need not be possessed during the commission of the actual offense of conviction. *United States v. Faison*, 339 F.3d 518, 520 (6th Cir. 2003). Rather, "all that the government need show is that the dangerous weapon be possessed during 'relevant conduct.'" *Id.* Whether the April 2018 transaction counts as "relevant conduct" to the February 2018 drug-possession charge is a question of law that we review de novo. *See Hill*, 79 F.3d at 1481.

"Relevant conduct," in turn, is defined under U.S.S.G. § 1B1.3. The applicable subsection of this Guideline, U.S.S.G. § 1B1.3(a)(2), provides that, "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts," relevant conduct includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction."

Offenses "qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses."  U.S.S.G. § 1B1.3 cmt. n.5(B)(ii).  The sentencing court must consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses" in assessing whether offenses occurred during the same course of conduct.  *Id.*  On the other hand, "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*."  U.S.S.G. § 1B1.3 cmt. n.5(B)(i).

Once the government shows that the defendant possessed a weapon during relevant conduct, a presumption arises that the weapon was connected with the offense of conviction. *United States v. Moreno*, 899 F.2d 465, 470 (6th Cir. 1990).  The defendant may overcome this presumption only upon demonstrating that "it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1 cmt. n.11(A).

### 1.      *Whether West possessed the weapon*

West first challenges the district court's factual finding that he possessed the weapon found in the vehicle being driven by Erroll Johnson in April 2018.  He argues that the only evidence showing that he possessed the gun was hearsay testimony from Jeanetta Johnson (the front-seat passenger), which was relayed to the court by Officer Hunter Harrison, the law-enforcement officer who initiated the traffic stop.  According to Officer Harrison, Jeanetta Johnson informed the officer that West "stated that he had a gun on him and needed to get rid of it" after West entered the car outside the Meijer supermarket.  Because all three of the occupants of the vehicle denied ownership of the gun, Officer Harrison relied in part on Jeanetta Johnson's statement in charging West with possession of the weapon.

West contends that this evidence was unreliable because Jeannetta Johnson was in a romantic relationship with Erroll Johnson, the driver of the car.  (Impliedly, Jeanetta Johnson sought to protect Erroll Johnson by implicating West.)  He also points to the fact that Erroll Johnson, who was charged with joint possession of the firearm found in the vehicle, claimed to

have no knowledge of the gun or who owned it. Absent the hearsay evidence, West contends, there was no proof that he had knowledge of the presence of the gun under the front passenger seat.

But these arguments do not compel us to overturn the district court's factual finding under the clear-error standard. Hearsay evidence, such as Jeanetta's Johnson's statement, may be relied upon by the sentencing court. *United States v. Armstrong*, 920 F.3d 395, 398 (6th Cir. 2019) (explaining that district courts may consider hearsay evidence at sentencing "[s]o long as the information has *some* evidentiary basis to satisfy a minimal indicium of reliability" (citation and internal quotation marks omitted) (emphasis in original)). Officer Harrison testified that he believed that Jeanetta Johnson had been truthful in her account, and he explained that she had been "Mirandized" and was not herself prohibited from possessing a firearm. Furthermore, he testified that the gun was within West's reach under the front passenger seat. This evidence overcomes the "relatively low hurdle" of the indicia-of-reliability standard. *See id.* (citation omitted). We are therefore not left with the "definite and firm conviction" that the district court erred in finding that West possessed the gun. *See United States v. Orlando*, 363 F.3d 596, 603 (6th Cir. 2004) (citation omitted).

### 2. *Whether the weapon was possessed during "relevant conduct"*

We now turn to the question of whether the April 2018 transaction was "relevant conduct" as defined by U.S.S.G. § 1B1.3(a)(2). For West's April 2018 transaction to be "relevant," his actions must "amount to an offense for which a criminal defendant could potentially be incarcerated," although the relevant conduct need not lead to a conviction. *See United States v. Henry*, 819 F.3d 856, 865 (6th Cir. 2016) (citation, brackets, and internal quotation marks omitted). Moreover, "state offenses may qualify as 'relevant conduct' under U.S.S.G. § 1B1.3(a)(2)." *United States v. Maken*, 510 F.3d 654, 657 (6th Cir. 2007); *see also United States v. Hough*, 276 F.3d 884, 898 (6th Cir. 2002) (explaining that "a federal district court may consider any relevant conduct when sentencing a defendant, whether or not the conduct is a federal crime" (citation omitted)).

The government argues that the April 2018 transaction was a drug offense for which West could have been incarcerated under Kentucky state law. It cites Kentucky Revised Statute § 218A.350(1), which provides that "[n]o person shall sell or transfer any substance, other than a controlled substance, with the representation or upon creation of an impression that the substance which is sold or transferred is a controlled substance." This offense constitutes a Class A misdemeanor in Kentucky, carrying a penalty of up to 12 months' imprisonment. Ky. Rev. Stat. Ann. §§ 218A.350(7)(a), 532.090. The April 2018 Epsom salts transaction therefore meets the threshold requirement to be relevant conduct, even though it was both uncharged and a state offense only.

We must next consider whether the April 2018 transaction qualifies as either (1) part of the same "course of conduct," or (2) part of a "common scheme or plan" as the February 2018 drug transaction. *See* U.S.S.G. § 1B1.3(a)(2). West argues that the April 2018 transaction was not part of the same course of conduct as the February 2018 drug transaction because the two events cannot be considered "regular" and because a two-month time interval separated them. He does not address, however, the district court's reasoning that the February and April transactions were part of a common scheme or plan. As the district court pointed out, the transactions involved a common victim (the confidential informant), a common purpose (for West to receive money from illicit transactions), and a similar modus operandi (conducting the illicit transactions from Walmart or Meijer restrooms).

We agree with the district court's reasoning and conclude that the April 2018 transaction took place as part of the same common scheme or plan as the February 2018 transaction. The February and April transactions were substantially connected by not just one, but three, common factors. *See, e.g.*, *United States v. McCloud*, 935 F.3d 527, 532 (6th Cir. 2019) (concluding that two drug sales had the common purpose of "distribut[ing] drugs"); *Henry*, 819 F.3d at 865 (determining that illegal firearm sales were part of a common scheme or plan where "the same location was used" and "the same parties were present at the sales").

Linking the two transactions is fully consistent with the reason for the enhancement under U.S.S.G. § 2D1.1(b)(1), which "reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1 cmt. n.11(A). Possessing a gun while

trafficking simulated drugs involves no less danger than possessing a gun while trafficking genuine methamphetamine. And perhaps there is even more of a danger because a deceived drug purchaser is far more likely to angrily confront the selling drug dealer than a purchaser who gets what he paid for.

Based on our conclusion that the April 2018 transaction was part of the same common scheme or plan as the February 2018 transaction, we have no need to address whether the transactions were part of the same course of conduct. *See McCloud*, 935 F.3d at 533 (explaining that whether conduct is part of a common scheme or plan "is an alternative basis for a finding of relevant conduct that is not subject to the same-course-of-conduct factors" (emphasis omitted)).

West's final argument on this issue is that any potential criminal offense committed by him during the April 2018 transaction would not be "groupable" with the drug offense for which he was convicted. Indeed, U.S.S.G. § 1B1.3(a)(2) applies "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." U.S.S.G. § 3D1.2(d), in turn, applies

> [w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

The subsection then lists specified federal offenses that are "groupable" under this category.

West's offense of conviction—distributing methamphetamine, in violation of 21 U.S.C. § 841(a)(1)—is listed as a groupable offense under U.S.S.G. § 3D1.2(d). His putative Epsom salts offense under Kentucky Revised Statutes § 218A.350 is not.

But this court has explained that U.S.S.G. § 1B1.3(a)(2) "is not concerned with whether the *relevant conduct* would be grouped with the *offense conduct*." *United States v. Hodge*, 805 F.3d 675, 682 (6th Cir. 2015) (emphasis in original). Rather, "[§] 1B1.3(a)(2) simply says its provisions apply to groupable 'offenses,' and then authorizes courts to consider other acts that 'were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *Id.* Relevant conduct may therefore include violations of state law not listed as groupable under U.S.S.G. § 3D1.2(d). *See, e.g.*, *United States v. Maken*, 510 F.3d 654, 659 (6th

Cir. 2007) (determining that a state tax offense was relevant conduct under § 1B1.3(a)(2)); *United States v. Bandy*, 172 F.3d 49, 1999 WL 17646, at *3 (6th Cir. 1999) (table) (determining that the state offense of mail theft was relevant without assessing whether it grouped with the underlying federal offense of conviction).

We therefore conclude that the district court did not err in considering West's April 2018 transaction to be relevant conduct under the Guidelines. As such, we find no error in the application of the enhancement under U.S.S.G. § 2D1.1(b)(1) to West's sentence.

**C.     The reasonableness of West's sentence under 18 U.S.C. § 3553(a)**

West next challenges the length of his sentence, arguing that the 40 months of imprisonment imposed by the district court was "truly greater than necessary." West specifically argues that the district court did not give enough consideration to West's history and characteristics under 18 U.S.C. § 3553(a)(1) and to West's need for correctional treatment under 18 U.S.C. § 3553(a)(2)(D) in reaching the 40-month sentence. He asserts that, because he is a drug addict in need of treatment, a shorter sentence with a period of drug rehabilitation would be more appropriate.

West does not make clear whether he challenges the procedural or the substantive reasonableness of his sentence. His claim that the district court did not adequately consider his need for correctional treatment under 18 U.S.C. § 3553(a)(2)(D) may be construed as a procedural challenge. *See United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018) (explaining that whether the district court failed to consider a factor is a question of procedural reasonableness). This claim is subject to plain-error review because West did not raise the objection before the district court. *See United States v. Bailey*, 488 F.3d 363, 368 (6th Cir. 2007). West's challenge to the length of his sentence, on the other hand, is a claim that his sentence was substantively unreasonable. *See Rayyan*, 885 F.3d at 442 ("A claim that a sentence is substantively unreasonable is a claim that a sentence is too long (if a defendant appeals).").

Regarding West's procedural challenge, the record shows that the district court did indeed weigh West's need for drug rehabilitation in handing down West's sentence. Specifically, the court explained that the need for treatment was "one of the biggest issues for [West]," and it recommended that West participate in a residential drug-treatment program during his period of incarceration. The record thus shows no plain error.

As for West's argument that the district court imposed an unreasonably long sentence, his argument "ultimately boils down to an assertion that the district court should have balanced the § 3553(a) factors differently." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008). But such arguments are "simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence." *Id.* (citation omitted). Indeed, this court has explained that "[t]he fact that the district court did not give the defendant the exact sentence he sought is not a cognizable basis to appeal, particularly where the district court followed the mandate of § 3553(a) in all relevant respects." *United States v. Dexta*, 470 F.3d 612, 616 (6th Cir. 2006) (citation omitted). West's desire for a shorter sentence is understandable, but the district court did not abuse its discretion in imposing a sentence within the relevant Guidelines range.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.