**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0427n.06

Case Nos. 19-3526/3677

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Jul 23, 2020 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| CORDELL JENKINS (19-3526); ANTHONY | ) | DISTRICT OF OHIO |
| HAYNES (19-3677), | ) | |
| | ) | |
| Defendants-Appellants. | ) | **O P I N I O N** |

**BEFORE: MOORE, CLAY, and McKEAGUE, Circuit Judges.**

**McKEAGUE, Circuit Judge.** Anthony Haynes and Cordell Jenkins were pastors in Ohio. Both were convicted for the sex trafficking and sexual exploitation of the same minor child. Both were sentenced to life in prison. That's what the United States Sentencing Guidelines recommended. In their consolidated appeals, both claim their life sentences were unreasonable. Seeing no grounds for resentencing, we AFFIRM.

**I. Facts and Procedural History**

1. Background Facts

Anthony Haynes was the pastor at the Greater Life Christian Center in Toledo, Ohio. In 2014, a Greater Life congregant told Haynes that her 14-year-old daughter, T.T., had been sexually abused as a child. One Sunday, upon hearing the news of T.T.'s traumatic past, Haynes called T.T.

in front of the whole congregation. Haynes vowed to protect T.T. and not let anything harm her. Shortly thereafter, T.T. moved into Haynes' home and started calling him "Dad."

Within weeks, Haynes started sexually abusing T.T. While in his office at the church, Haynes pressured T.T. into having sex with his stepdaughter while he recorded it on his phone, aroused himself, and made sexual remarks. Not long after, when T.T. was still 14, Haynes himself had sex with her, again at his church. T.T. testified that she felt manipulated. After that first occurrence, Haynes started having sex with T.T. more frequently, as often as multiple times a week, occasionally recording it on his cell phone. This continued for years, even after T.T. moved out of Haynes' residence.

Haynes would also condition giving T.T. time, money, and support on her having sex with him. T.T. testified that, on days when Haynes had sex with her, he would spend time with her and give her money for things she needed. In contrast, on days when they did not have sex, Haynes was not supportive; he would barely even answer his phone.

Haynes also arranged for other pastors to have sex with T.T. One was Kenneth Butler, who testified that Haynes called him one day, picked him up, and brought him to Haynes' church, where the two of them had sex with T.T. Butler knew T.T. was a minor. And yet he had sex with her on that first day when Haynes called him and several other times after that, both with and without Haynes' involvement.

The other was Cordell Jenkins, the other appellant in this case. Jenkins was the pastor at Abundant Life Ministries in Toledo. By the time Jenkins met her, T.T. had moved out of Haynes' house to live with her new guardian, Nikki Guyton. T.T. met Jenkins through the church, where Guyton attended. Haynes encouraged T.T. to send him explicit photos of herself that he would

then pass along to Jenkins, insisting that Jenkins had a lot of money. Haynes would then tell T.T. about Jenkins' sexual remarks upon seeing the photos.

Beginning in December 2016, Jenkins started communicating with T.T. through text messages. Their conversations were often sexual in nature, including Jenkins asking for sex and for sexually explicit photos of T.T. Jenkins also had sex with T.T. on multiple occasions over the course of several months. He also asked T.T. to find a friend so they could have a threesome. T.T. and her friend, J.M., also a minor, were taken by Jenkins to a motel, where they all had sex. He would also give T.T. money after they had sex.

Then one day in March 2017, T.T. was in trouble at home for staying out over the weekend, leading Guyton (T.T.'s guardian at the time) to take T.T.'s cell phone. Guyton discovered sexually explicit text messages on the phone, which set in motion a chain of events that led to the arrest and indictment of both Haynes and Jenkins.

### 2. Proceedings Against Jenkins

Jenkins was charged with conspiracy to sex traffic children, 18 U.S.C. § 1594(c); two counts of sex trafficking of children, 18 U.S.C. § 1591(a)(1), (b)(2), and (c); sexual exploitation of children, 18 U.S.C. § 2251(a) and (e); and knowingly receiving material involving the sexual exploitation of minors, 18 U.S.C. § 2252(a)(2). Jenkins pled guilty to the sex-trafficking and sexual-exploitation charges, and the government dropped the conspiracy and visual-material charges. The district court sentenced Jenkins to the Guidelines recommendation of life in prison on the sex-trafficking counts and thirty years on the sexual-exploitation count, to be served concurrently, followed by a ten-year term of supervised release.

3.  Proceedings Against Haynes

Haynes was charged with conspiracy to sex traffic children, 18 U.S.C. § 1594(c); sex trafficking of children, 18 U.S.C. § 1591(a)(1), (b)(2), and (c); sexual exploitation of children, 18 U.S.C. § 2251(a) and (e); and obstruction of a sex-trafficking investigation, 18 U.S.C. § 1591(d). He went to trial and testified in his own defense, denying ever molesting or having sex with T.T. The jury convicted him on all counts.

Next came sentencing. Regarding his Sentencing Guidelines range, Haynes' offense level came out to 49, which exceeded the maximum Guideline offense level of 43, so his offense level was treated as if it were 43. U.S.S.G. ch. 5, pt. A, n.2. Combined with a criminal history category of I, Haynes' Guidelines-recommended sentence was life in prison. The district court imposed the Guidelines-recommended life sentence on the conspiracy and sex-trafficking counts, thirty years on the sexual-exploitation count, and twenty years on the obstruction count, all to be served concurrently. Both defendants timely appealed their sentences, and we consolidated their appeals before this court.

## II. Discussion

1.  Standard of Review

We review a district court's sentencing decision for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). Sentencing begins with the calculation of the U.S. Sentencing Guidelines range. *Id.* at 49. But the Guidelines range is not mandatory. *See id.* at 51. The district court considers the Guidelines recommendation alongside the sentencing factors outlined in 18 U.S.C. § 3553(a). The court then must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50.

On appeal, we consider whether the defendant's sentence was reasonable. Reasonableness in sentencing has two components: procedural and substantive. Examples of procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. Another example is if the district court considers an impermissible factor. *United States v. Cabrera*, 811 F.3d 801, 809 (6th Cir. 2016). If the sentence is procedurally sound, we move on to substantive reasonableness, looking to the totality of the circumstances. *Gall*, 552 U.S. at 51. Substantive error occurs when, for example, a district court places too much weight on some of the § 3553(a) factors and too little on others. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Reliance on an impermissible factor may also affect the substantive reasonableness of the sentence. *See United States v. Hatcher*, 947 F.3d 383, 394-95 (6th Cir. 2020).[1] Our substantive-reasonableness review is "highly deferential," because weighing the factors is "a matter of reasoned discretion, not math." *Rayyan*, 885 F.3d at 442. Also, if the sentence is within the Guidelines range, then we presume it is reasonable. *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020).

### 2. Jenkins' Sentence

*Sentencing Disparities*. Jenkins' first argument is about sentencing disparities. One goal in sentencing is to avoid unwarranted sentencing disparities, meaning different sentences for similar crimes committed by defendants with similar records. This goal is embodied in 18 U.S.C. § 3553(a)(6), which directs sentencing courts to consider "the need to avoid unwarranted sentence

---

[1] As we have noted before, in recent years our circuit has taken inconsistent positions on whether considering an impermissible factor is better analyzed as a procedural or substantive error. *See United States v. Frost*, 770 F. App'x 744, 745 (6th Cir. 2019). Because we find no error, procedural or substantive, we need not resolve that issue here.

disparities among defendants with similar records who have been found guilty of similar conduct." This factor is concerned with preventing nationwide sentencing disparities. *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010). But our precedents also allow a sentencing court to consider, in its sound discretion, local sentencing disparities, meaning disparities within the same federal district court. *See United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008); *United States v. Harris*, 589 F. App'x 327, 328 (6th Cir. 2015) (per curiam).

Jenkins argues that his sentence was unreasonable because the district court overemphasized sentencing disparities. He points to the government's sentencing memorandum, which highlighted two other cases from the same district involving similar crimes. The government argued that the district court should not create an unwarranted sentencing disparity between Jenkins and these other defendants. But that argument can't work, Jenkins claims, under our decision in *United States v. Smith*, where we said that "[a] sample size of two defendants [was] not sufficient to show such a disparity" under § 3553(a)(6). 510 F.3d 603, 610 (6th Cir. 2007). Granted, *Smith* was a case where a defendant was pointing to a different, lower sentence for a similar crime in order to show that his *higher* sentence would create a disparity. *Id.* But surely, Jenkins contends, if the defendant can't use a sample size of two to argue *for* leniency, then the government can't use such a small sample size to argue *against* leniency.

This argument misses the mark for a few reasons. For one, considering local sentencing disparities is not impermissible. A sentence can be procedurally unreasonable if the sentencing court considered an impermissible factor. *Cabrera*, 811 F.3d at 809. But that can't be the case here, because this court has already said that a district court may consider local disparities (that is, disparities within the same federal district) if relevant. *Houston*, 529 F.3d at 752. Thus, consideration of local sentencing disparities is not a categorically impermissible sentencing factor.

Nor did the district court give too much weight to sentencing disparities. A sentence can be substantively unreasonable if the sentencing court gives too much weight to some sentencing factors over others. *Rayyan*, 885 F.3d at 442. Keep in mind that we review the district court's weighing of sentencing factors under a deferential abuse-of-discretion standard. *Gall*, 552 U.S. at 51. Also, because Jenkins' sentence was within the Guidelines range, it is presumed reasonable. *West*, 962 F.3d at 187. And here, Jenkins does not point us to anything from the district court itself suggesting it gave too much weight, or even any weight, to the government's sentencing-disparity argument. Jenkins thus has not rebutted the presumption that his within-Guideline sentence is substantively reasonable on the sentencing-disparity issue.

*Other Issues*. Next, Jenkins argues that his sentence was too long—longer than necessary to achieve the goals of our sentencing framework. At best, he gives two specific reasons why this is the case.

First, Jenkins takes issue with the district court's statement that "age alone is not a factor" when considering his potential for recidivism. We see no abuse of discretion on this ground. It is the district court's job to weigh the various factors set out in § 3553(a). Doing so "is a matter of reasoned discretion, not math," hence why our review is so deferential. *Rayyan*, 885 F.3d at 442. And here, the relevant sentencing factor is incapacitation—the need to protect the public from Jenkins' possible future crimes. 18 U.S.C. § 3553(a)(2)(C). The "age alone" statement Jenkins is referencing was in response to Jenkins' argument that protecting the public from Jenkins' future crimes was not a big concern because of Jenkins' age. But the court noted that, while predicting future crime is difficult to do, "[o]ne must look at the entire picture of the defendant and the crime involved." R. 213, PID 1734. Not just the defendant's age. And the sentencing transcript makes clear that the district court did look at the entire picture. It examined, among other things, the

nature of Jenkins' offense, its occurrence over a span of months, and Jenkins' refusal to fully accept responsibility. We see no abuse of discretion.

Second, Jenkins argues that his "dismissed counts were punished." Jenkins Br. at 12. How, you might ask? Jenkins doesn't say. Time and again, we've reiterated "that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed" forfeited. *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)); *accord United States v. George*, 804 F. App'x 358, 363 n.1 (6th Cir. 2020). That's exactly what we have here. Accordingly, Jenkins has forfeited any substantive-reasonableness argument based on the dismissed counts.[2]

The remainder of Jenkins' argument consists of blanket statements that his sentence is greater than necessary to achieve the goals of the sentencing statute. But Jenkins' "mere allegation that the sentence imposed is greater than necessary to achieve the goals of punishment outlined in § 3553(a) is insufficient to rebut the presumption of reasonableness." *United States v. Dexta*, 470 F.3d 612, 616 (6th Cir. 2006). We see no substantive error and therefore affirm Jenkins' sentence.

### 3. Haynes' Sentence

Haynes argues that the district court wrongly applied a sentencing enhancement for "undue influence." Under U.S.S.G. § 2G1.3(b)(2), if a defendant "unduly influenced a minor to engage in prohibited sexual conduct," then his offense level is increased by two levels. The ultimate question under this factor is whether the defendant's "influence over the minor compromised the voluntariness of the minor's behavior." *Id.* § 2G1.3 n.3(B). If the defendant is at least 10 years older than the minor, then there is a rebuttable presumption that there was undue influence. *Id.*

---

[2] Similarly, Jenkins claims the Guidelines range was improperly calculated, but he doesn't explain how. For the same reason, he has forfeited that argument as well.

The government argues that applying the enhancement was proper. But it also argues that even if the district court did err, any error would have been harmless because it did not affect Haynes' Guidelines range. An error is harmless when it "does not affect substantial rights." Fed. R. Crim. P. 52(a); *accord Molina-Martinez v. United States*, 136 S. Ct. 1338, 1348 (2016). Harmless errors "must be disregarded." Fed. R. Crim. P. 52(a). "Errors that do not affect the ultimate Guidelines range or sentence imposed are harmless and do not require resentencing." *United States v. Faulkner*, 926 F.3d 266, 275 (6th Cir. 2019).

We agree with the government that any error here would have been harmless. The maximum offense level under the Guidelines is 43. Any offense level above that is treated as if it were an offense level of 43. U.S.S.G. ch. 5, pt. A, n.2. Here, Haynes' offense level was 49. Suppose we accepted his argument that the two-level undue-influence enhancement should not have applied. He identifies no other errors, so that still leaves him with an above-maximum offense level of 47. Haynes ends up right back where he started: with an offense level of 43 and a recommended life sentence. And the district court made clear at sentencing that it thought the Guidelines-recommended life sentence was proper in Haynes' case. Thus, any error in applying the undue-influence enhancement would not have changed Haynes' offense level, Guidelines range, or sentence and therefore would have been harmless. *United States v. Castro*, 960 F.3d 857, 867 (6th Cir. 2020). And so, because it wouldn't change anything, we need not even address whether the enhancement applies. *See United States v. Whyte*, 795 F. App'x 353, 366 (6th Cir. 2019). The undue-influence enhancement was the only ground Haynes cited for reversal. Thus, his appeal fails.

## III.  Conclusion

Neither Jenkins nor Haynes has shown any ground for reversing their respective sentences.

We affirm.