NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0282n.06

Case No. 22-5041

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jul 14, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) ) | |
| JONATHAN E. GARLAND, | ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: GUY, MOORE, and CLAY, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge.** Jonathan Garland pleaded guilty to three counts of distributing controlled substances and was sentenced to concurrent 120-month terms of imprisonment. On appeal, Garland challenges only the imposition of a two-level enhancement in his offense level because "a dangerous weapon (including a firearm) was possessed." U.S. Sentencing Guidelines Manual (USSG) § 2D1.1(b)(1) (2021). Because Garland failed to show that it was "clearly improbable that the weapon was connected with the offense," *Id.* § 2D1.1, comment. (n.11(A)), we affirm.

I.

Garland admitted in his plea agreement that he sold controlled substances—namely, mixtures containing methamphetamine, methamphetamine (actual), and 13 tablets containing fentanyl—to a confidential informant on November 3, 5, 16, and 27, 2020. And, when Garland was arrested following a traffic stop on December 28, 2020, another 9.5 tablets containing fentanyl

were seized. A search warrant was obtained and executed at Garland's home, where officers forced open a safe in which they found "methamphetamine, approximately 72 tablets [containing a detectible amount of fentanyl], scales, baggies, approximately $4730 in U.S. currency, three shotguns, one rifle and seven handguns." (Plea Agreement, Para. 5c.) ATF Special Agent James Freeman testified at sentencing that at least four of the handguns were loaded.

Garland pleaded guilty to three counts of distributing or possessing with intent to distribute methamphetamine and fentanyl in violation of 21 U.S.C. § 841(a). He did not dispute that the converted drug quantity resulted in a base offense level of 32. *See* USSG § 2D1.1(a)(5) and (c)(4). To that, two levels were added for possession of a dangerous weapon and three levels were deducted for acceptance of responsibility. *See* USSG §§ 2D1.1(b)(1) and 3E1.1. The district court permitted Garland to object to the two-level enhancement—despite the plea agreement's recommendation that it apply—but overruled the objection after hearing testimony from Agent Freeman and Garland's girlfriend, Candi Crawford.

Garland had only one criminal history point, so he had a criminal history category of I. That in combination with an offense level of 29 (without the weapon enhancement) would correspond to a Guidelines range of 87 to 108 months, while an offense level of 31 (with the enhancement) would correspond to a range of 108 to 135 months of imprisonment. However, because Garland was subject to a statutory minimum sentence of 120 months on Count 2, the applicable Guidelines range was instead 120 to 135 months of imprisonment. *See* USSG § 5G1.2(b). The district court sentenced Garland to concurrent terms of 120 months of imprisonment, and this appeal followed.[1]

---

[1] One might reasonably ask whether any error with respect to the § 2D1.1(b)(1) enhancement could have affected Garland's sentence. However, the government does not urge a harmless error analysis because Garland argued at sentencing that he could have been sentenced under the "safety valve" provision without regard for the statutory minimum if he did not possess a firearm in

II.

Garland's claim of error in the calculation of his offense level is a challenge to the procedural reasonableness of his sentence. *See United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014). We review the district court's interpretation of the Guidelines de novo, and its factual findings for clear error. *See United States v. Abdalla*, 972 F.3d 838, 850 (6th Cir. 2020). "[M]ixed questions of law and fact receive 'deferential review' and not de novo review." *Id*. (quoting *Buford v. United States*, 532 U.S. 59, 64 (2001)).

For § 2D1.1(b)(1)'s enhancement to apply, the government bears the burden to prove by a preponderance of the evidence that "(1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense." *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020) (citation omitted). As for the first element, Garland does not (and cannot) dispute that he possessed the firearms—including a number of loaded handguns—that were found in the safe in his home to which he alone had the combination. As for the second element, it is settled that "the weapon need not be possessed during the commission of the actual offense of conviction." *Id*. (citing *United States v. Faison*, 339 F.3d 518, 520 (6th Cir. 2003)). "[A]ll that the government need show is that the dangerous weapon [was] possessed during 'relevant conduct.'" *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012) (alterations in original) (quoting *Faison*, 339 F.3d at 520), *abrogated on other grounds by New York Rifle & Pistol Ass'n v. Bruen*, 142 U.S. 2111 (2022). The Guidelines define relevant conduct to include "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2); *see also Faison*, 339 F.3d at 520. Here,

---

connection with the offense. *See* USSG § 5C1.2; 18 U.S.C. § 3553(f). It is not necessary to reach this issue because we find no error in the application of the enhancement under § 2D1.1(b)(1).

there can be no doubt that Garland possessed the firearms during the same time period that drugs stored in the same safe were sold to the confidential informant. Specifically, prior to one controlled buy, Garland told the confidential informant that he had to "go into the safe to get it." It was not clearly erroneous to find that the firearms in the safe were possessed during relevant conduct.

Once the government establishes both of those elements by a preponderance of the evidence, a presumption arises that the firearms were "connected with the offense of conviction." *West*, 962 F.3d at 188 (citing *United States v. Moreno*, 899 F.2d 465, 470 (6th Cir. 1990)). Garland can overcome this presumption by presenting evidence to show that "it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1, comment. (n.11(A)); *see also Greeno*, 679 F.3d at 514. Some factors to consider include the type of firearm, the presence of ammunition, the firearm's accessibility to the defendant, its proximity to drugs, money, or other evidence of drug trafficking, its use by the defendant, and the nature of the offense of conviction. *See Greeno*, 679 F.3d at 515.

Garland emphasized that none of the controlled buys occurred at his home; that the confidential informant said he did not see a firearm during any of the transactions; and that officers did not find a firearm in Garland's possession when he was stopped and arrested. The district court acknowledged as much, but suggested that each of these points was more relevant to whether Garland could be convicted of a substantive offense under 18 U.S.C. § 924(c). In addition to these facts, Garland sought to rebut the presumption of connectedness with evidence from his girlfriend, Candi Crawford.

The district court accepted Crawford's testimony that all the firearms—those kept inside the safe and those that were not—belonged to her. Crawford explained that some were inherited, others belonged to her deceased husband, and one was purchased by her shortly before the search

warrant was executed. Garland and Crawford had an on-and-off relationship, but Crawford said that when she returned to live with Garland about six months prior to the execution of the search warrant, she asked Garland to store her firearms in his safe to keep them from other family members. Crawford explained that some of the firearms in the safe were loaded with ammunition because she and Garland would take them to practice shooting and because she used them to teach her children how to use, load, and unload firearms. Crawford testified that Garland also cleaned the firearms because she did not know how, but emphasized that Garland had rebuffed her suggestion that he should carry a firearm when he went to work.

Crawford testified that she did not have the combination to the safe, had not been inside the safe, and was not aware that Garland was keeping methamphetamine and fentanyl in the safe with the firearms. Rather, Garland maintained exclusive access to the safe in which he kept multiple loaded handguns in close proximity to (1) the controlled substances involved in the distribution offenses of conviction, (2) scales that are often used in the drug trade, and (3) more than $4,000 in cash and a lot of food stamp cards that were likely proceeds of drug transactions. Agent Freeman explained that, in his experience, it is common for someone who is distributing narcotics to keep firearms and narcotics together for purposes of protection. Despite Garland's assertion that the presence of the firearms was a coincidence unconnected to his relevant conduct, the loaded handguns found in the safe present the very "increased danger of violence" that the enhancement is intended to reflect. USSG § 2D1.1(b)(1), comment. (n.11(A)). Garland distributed controlled substances to the same buyer on multiple occasions during a single month and, in doing so, kept the drugs, likely proceeds, and loaded handguns together in the safe he kept in his bedroom closet. Although no firearm was carried or used during Garland's actual offenses

of conviction, the record supports the district court's finding that it was not "clearly improbable" that the loaded handguns kept in the safe were possessed during relevant conduct.

**AFFIRMED**.