NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0388n.06

Case No. 22-5995

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 17, 2024
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JAYSHAWN ROBINSON,

    Defendant-Appellant

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
KENTUCKY

OPINION

Before: SILER, COLE, and BUSH, Circuit Judges.

**SILER, Circuit Judge.** Jayshawn Robinson was sentenced to 185 months' imprisonment for a conspiracy to distribute 500 grams or more of methamphetamine and heroin. His sentence included three enhancements, one for possession of a gun during the offense, a second for attempting to distribute heroin in jail while awaiting sentencing, and a third for his role in the original offense. Robinson argues that these enhancements were unjustified because no firearm was ever seized during the investigation, his conduct in the prison was not part of the same scheme as the charged offense, and the conspiracy did not include at least five individuals. We affirm the sentence enhancements for possession of a firearm and for Robinson's role in the offense, but reverse on the enhancement for distributing drugs in jail drug.

**I.**

Robinson was a "Michigan-based supplier of methamphetamine and heroin" who also operated in Kentucky through his contacts there. Dario Johnson—nicknamed "Juice"—appeared

to be Robinson's main partner and would accompany him to Kentucky. Robinson regularly distributed drugs to Charles Chandler in Kentucky. Cory Johnson was one of Robinson's main contacts. He would transport Robinson to Kentucky and purchase firearms for Robinson—who was a convicted felon and therefore ineligible to purchase firearms—in exchange for drugs for his personal use. Ashley Johnson would also buy guns for Robinson and otherwise assist with collection of payments. Thomas Smith would allow Robinson and Dario to stay at his house in Kentucky in exchange for drugs for his own personal use. This conspiracy ran from approximately April 2021 until Robinson's arrest on July 21, 2021.

While incarcerated, Robinson bought drugs from two other inmates, with the intent to distribute them. All three were caught, one inmate died because of the drugs, and all three were charged by separate indictment. *See United States v. Jayshawn Robinson, et al.*, 7:22-CR-1. However, the United States dropped the charges against Robinson as part of the plea agreement in the present case.

The presentence report (PSR) recommended that Robinson's base offense level be increased by specific offense characteristics. Specifically, it recommended that Robinson's offense level be increased by two levels under § 2D1.1(b)(1) for possession of a firearm, two levels under § 2D1.1(b)(4) for distribution of a controlled substance within a prison, and four levels under § 3B1.1(a) for being an organizer and leader of a conspiracy of five or more people. Robinson objected to all three enhancements.

Ultimately, the district court agreed with the PSR in most respects. It found that the § 2D1.1(b)(1) firearm enhancement was justified because co-conspirators admitted that they had purchased guns for Robinson, received firearms in trade for drugs, retained a pistol magazine for Robinson, and that Robinson regularly carried a Glock pistol with an extended magazine.

Additionally, Robinson, in a recorded phone call with Ashley,[1] asked her to get his Glock from Thomas's house. The PSR also notes that Robinson admitted that he asked Thomas to convert a Glock pistol to be fully automatic, and that he and Dario visited pawn shops and pointed out the guns they wanted Cory to buy for them later.

The district court also found the enhancement for selling drugs within a prison to be justified. The court decided that the conduct was not part of the same "common scheme, or plan as the offense," but instead should be considered part of the same "course of conduct" as the charged conspiracy. Robinson was a heroin trafficker, and when he was "taken off the street . . . he saw this opportunity [to obtain money and drugs] and jumped on it to continue heroin trafficking." While it involved different co-conspirators from the charged conduct, it was nevertheless the same type of behavior, conducted in a different place.

Finally, the district court addressed the PSR's suggested four-level increase for Robinson's role in the offense. The United States only asked for three levels, not four, because the prosecutor was not sufficiently confident that Robinson's role demanded four. The court decided that Robinson was not an "organizer or leader" of the conspiracy but was instead a "manager or supervisor" under U.S.S.G. § 3B1.1(b). He exercised some modicum of control over members of the conspiracy, particularly Ashley when he directed her to pick up drug payments and retrieve his Glock from Thomas's house. The court concluded that while "it's just hard to look at what happened on August 12th and . . . conclude that the defendant did not have some level of control," that control did not rise to the level of a "financial stake, planning, [or] sort of the hierarchical characteristics" expected of organizers. Therefore, the court increased Robinson's base offense by three levels. *See* U.S.S.G. § 3B1.1.

---

[1] Because some members of the conspiracy share last names, we refer to them by their first names.

**II.**

When examining a district court's decisions under the Guidelines, we review mixed questions of law and fact de novo, and findings of fact for clear error. *United States v. Gardner*, 649 F.3d 437, 442 (6th Cir. 2011) ("[W]hile a district court's sentencing calculation is reviewed *de novo*, its factual findings are reviewed for clear error."); *United States v. Hayes*, 135 F.3d 435, 437 (6th Cir. 1998). Reversal is only warranted if we are "left with the definite and firm conviction" that the district court erred. *Gardner*, 649 F.3d at 442 (quoting *United States v. Orlando*, 363 F.3d 596, 603 (6th Cir. 2004)). At the sentencing hearing, the burden lies on the government to show by a preponderance of the evidence that the enhancement applies. *United States v. Nicolescu*, 17 F.4th 706, 725 (6th Cir. 2021).

**A.      Sufficient evidence justifies the firearm enhancement.**

The Sentencing Guidelines allow for a two-level increase in a defendant's base offense level if he possessed a dangerous weapon during the offense. U.S.S.G. § 2D1.1(b)(1). To obtain this enhancement, the prosecution must show by a preponderance of the evidence that (1) "the defendant actually or constructively possessed the weapon," and that (2) the weapon was possessed "during the commission of the offense." *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020). A defendant constructively possesses the weapon if he exerts ownership, dominion, or control "over the item itself," or such control "over the premises where the item is located." *Id*. The United States need only show the weapon was possessed "during the relevant conduct." *Id*. (quotations omitted). It does not matter that the weapon was not used or "possessed during the commission of the actual offense of conviction." *Id*.

Ample evidence supported application of the enhancement in this case. As the district court outlined at the sentencing hearing, Robinson's co-conspirators testified that they obtained

guns for him. Thomas Smith traded a rifle to Dario in exchange for a gram of heroin. He stated that he was, at one point, retaining a pistol "clip" for Robinson. As the court noted, "[a] clip [implies] that there is a firearm to go with that clip." Ashley told investigators that she purchased firearms for Robinson during the conspiracy. Law enforcement confirmed the purchases, and Ashley was assessed two points at her sentencing under the same Guidelines provision for that conduct.[2] Tony Castle, a drug buyer who occasionally accompanied Robinson and other members of the conspiracy, told police that Robinson "always carried a Glock pistol, which had an extended magazine." As the district court noted, this testimony is more reliable because it is reference to "a specific type of firearm, it's a reference to a specific type of clip."

Robinson's own conduct and statements further support the enhancement. Most damningly, he told Ashley to retrieve his Glock from Thomas's house where he had left it. Robinson later admitted to law enforcement that he asked Thomas to convert a Glock to fully automatic operation, and that this was the gun he had forgotten. He also described a scheme whereby he and Dario would visit pawn shops and gun shows and point out firearms they wanted Cory or Ashley to purchase, who would then make straw purchases, including a shotgun and Glock pistol for Robinson. Some of these weapons were then transported back to Michigan.

Robinson's only defense is that no weapons were recovered during the investigation. However, the government's burden simply requires that it show, by a preponderance of the evidence, that Robinson possessed a weapon at the same time as the relevant conduct. *West*, 962 F.3d at 187. The testimony of Robinson's co-conspirators and his own testimony bear that burden. To defeat this showing, Robinson must either directly question the government's evidence, or

---

[2] As the district court noted, the fact that Ashley Johnson's base offense level was increased by two levels because of this conduct is not dispositive of the issue in this case, but it "does add to the reliability of the information."

show that "it is clearly improbable that the weapon was connected with the offense." *Id*. at 188 (quotations omitted) (quoting U.S.S.G. § 2D1.1 cmt. n.11(A)). He has done neither. We therefore affirm.

**B.      The district court misapplied the § 2D1.1(b)(4) enhancement.**

Section 2D1.1(b)(4) of the Guidelines provides for a two-level increase in the defendant's base-offense level "[i]f the object of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility." The Guidelines define an "offense" as "the offense of conviction and all relevant conduct under § 1B1.3." *Id*., § 1B1.1 cmt. n.1(I). Thus, it applies if the object of a defendant's charged offense was to distribute drugs in prison or if the defendant's distribution of drugs qualifies as relevant conduct.

While incarcerated pending sentencing in this case, Robinson was charged under a new indictment with conspiracy to possess and distribute heroin inside the prison, and with fentanyl distribution resulting in the death of an inmate. *See United States v. Jayshawn Robinson, et al.*, 7:22-CR-1, R. 1. This new indictment was dismissed on motion of the United States as part of the plea agreement in the present case. *See id.*, R. 74, 75, 93. Nevertheless, the Probation Office recommended a sentencing enhancement based on that conduct, and the United States agreed.

Because Robinson pleaded guilty only to conspiracy to distribute drugs outside of prison, the distribution of drugs in prison was clearly not the object of the charged offense. His conduct in prison therefore supports the application of the § 2D1.1(b)(4) enhancement only if it qualifies as "relevant conduct under § 1B1.3." U.S.S.G. § 1B1.1 cmt. n.1(I). Conduct is relevant when it is "part of the same course of conduct or common scheme or plan as the offense of conviction." *United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir. 1996) (quoting U.S.S.G. § 1B1.3(a)(2)).

The district court acknowledged that the prison scheme cannot be part of the same

"common scheme or plan as the offense of conviction" because it involved entirely different conspirators. Sent. Tr., PageID 669; *see also Hill*, 79 F.3d at 1483 (noting that a "common scheme or plan" will usually "include common victims, common offenders, common purpose, or similar modus operandi."). However, the court determined that Robinson's prison scheme was part of the same course of conduct as the original drug distribution conspiracy charge which was the subject of the plea agreement.

The "course of conduct concept looks to whether the defendant repeats the same type of criminal activity over time." *Hill*, 79 F.3d at 1482 (quotations omitted). Offenses "qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3 cmt. 5(B)(ii). Factors to consider "include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.* If one of the factors is absent, the others must be stronger. *Id.* Notably, the relevant conduct analysis "cannot be used to sentence a defendant based on 'isolated, unrelated events that happen only to be similar in kind.'" *Hill*, 79 F.3d at 1482 (quoting United States v. Sykes, 7 F.3d 1331 (7th Cir. 1993)). Indeed, as we noted approvingly in *Hill*, "two offenses [do] not constitute a single course of conduct simply because they both involve[] drug distribution." *Id*. at 1483 (quotations omitted).

Robinson's prison drug distribution is not the same course of conduct as his conspiracy to distribute drugs outside of prison. Though the events occurred close in time, Robinson's prison activities were distinct from his conspiracy to distribute drugs before he was incarcerated. It is not enough that Robinson's offense of conviction and prison conduct both involved drug distribution. His prison conduct did not occur during or in concert with the conduct supporting the charged

offense. It also involved different persons, customers, and methods, and nothing indicates that it was a continuation of Robinson's activities outside of prison.

This is consistent with how this circuit and others have applied the § 2D1.1(b)(4) enhancement. In *United States v. Vance*, for example, we upheld application of the enhancement where a defendant was convicted of smuggling drugs into a prison. No. 20-5819, 2021 WL 5133250, at *10 (6th Cir. Nov. 4, 2021). And in *United States v. Mayes*,[3] we upheld application of the enhancement when the defendant was charged with conspiracy to distribute drugs while incarcerated. 181 F.3d 105 (6th Cir. 1999) (table decision); *see also United States v. Anguiano*, 27 F.4th 1070 (5th Cir. 2022) (upholding application where inmate obtained distribution quantity of drugs); *United States v. Vanderpool*, 566 F.3d 754 (8th Cir. 2009) (upholding application where inmate smuggled drugs into jail then distributed them). Contrast those decisions with the Fourth Circuit's decision in *United States v. Dugger*, 485 F.3d 236 (4th Cir. 2007). There, our sister circuit reversed the application of the enhancement because the defendant was charged with distribution of cocaine outside of prison. *Id.* at 242. Though the defendant became involved in a drug distribution scheme while incarcerated, those activities were irrelevant to the charged offense because they did not "qualify as acts that occurred during, in preparation for, or in the course of attempting to avoid detection or responsibility for his charged offense." *Id.*

In summary, we do not believe that the prison distribution scheme, which was the subject of a separate and now-dismissed indictment, fits into the same "course of conduct" as the charged offense here. Therefore, we reverse the district court's application of this enhancement.

> **C.      Sufficient evidence shows that Robinson was a manager or supervisor of a qualifying conspiracy.**

---

[3] *Mayes* was decided before the 2010 Guidelines amendment that changed the distribution while in prison enhancement from 2D1.1(b)(3) to 2D1.1(b)(4).

Finally, the Guidelines provide for a three- or four-level increase in base offense level if the defendant took an aggravating role in the offense—in other words, if he was an "organizer or leader" or "manager or supervisor" of a conspiracy involving at least five individuals. USSG § 3B1.1. An "organizer or leader" receives four additional levels, and a "manager or supervisor" receives three. *Id.* For purposes of determining if the conspiracy involved at least five individuals, "[a] 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." *Id.*, cmt. 1. To qualify for the enhancement, Robinson must have been the "organizer, leader, manager, or supervisor of one or more other participants." *Id.*, cmt. 2. In other words, he need not have directed every member of the conspiracy; exercising managerial control over one individual is sufficient to justify the enhancement.

The district court decided that Robinson was a manager or supervisor of the conspiracy, and that he exercised sufficient control over Ashley to justify the enhancement. It noted that Robinson directed Ashley to travel and pick up payment for previously delivered drugs, essentially "dispatching a courier to pick up drug money." She also carried drugs between houses at Robinson's direction and did so "on two or three recent occasions." Robinson and his co-conspirators "were comfortable with her running money and drugs back and forth."

The district court also found that the conspiracy included at least five participants. Those participants included Robinson, Dario Johnson, Ashley and Cory Johnson, Charles Chandler, and Thomas Smith. The court noted that Tony Castle could also be considered a co-conspirator, but even without considering him the conspiracy reached six participants. As the PSR notes, Dario was Robinson's partner. Ashley Johnson worked various roles assisting Robinson, including purchasing guns, moving drugs, and retrieving cash payments at his direction. Cory transported Robinson to pick up drugs and money. Chandler purchased drugs from Robinson for distribution

9

in eastern Kentucky. And Thomas Smith allowed the conspirators to use his house in exchange for drugs, and "introduced Robinson and Dario" to potential customers.

The district court's determination that these individuals constituted a conspiracy is a factual decision which we review for clear error. *United States v. Olive*, 804 F.3d 747, 758–59 (6th Cir. 2015) ("We review the factual findings of the district court on this issue for clear error and accord deference to the legal conclusion that a person is an organizer or leader under Section 3B1.1."). A participant in a conspiracy is an individual who is "aware of the criminal objective" and offers his knowing assistance. *United States v. Anthony*, 280 F.3d 694, 698 (6th Cir. 2002). Based on the facts outlined above, we cannot say that it was error, let alone clear error. Robinson offers little argument to the contrary other than direct challenges to the evidence in the PSR, such as arguing that Smith only wanted drugs for his personal use and therefore couldn't have been part of the conspiracy. Even if this were true, it would not preclude him from satisfying the definition of a "participant." And Robinson challenges the counting of Tony Castle in the conspiracy. But even without counting Castle, there are six participants.

The government proved the applicability of this enhancement by a preponderance of the evidence, and the district court's factual findings were not clearly erroneous. Therefore, we affirm.

**III.**

The district court's judgment is AFFIRMED IN PART and REVERSED in PART. The application of sentencing enhancements based on the presence of a firearm and Robinson's managerial role in the conspiracy is affirmed. The application of a two-level enhancement for Robinson's attempt to distribute drugs in prison is reversed. The case is REMANDED to the district court for resentencing.